## WESTERN UNION TELEGRAPH CO. v. CASHMAN.

(Circuit Court of Appeals, Fifth Circuit. December 15, 1906.)

### No. 1,540.

1. LIBEL—TELEGRAPH MESSAGES—COPIES.

S. handed a libelous telegraph message directed to a newspaper published by plaintiff in Vicksburg to a boy who assisted defendant's agent in its office at Oxford, Miss., in the agent's absence. The boy forwarded the message by telegraph to Memphis, Tenn., where it was received by sound, and forwarded by another agent to defendant's agent in Vicksburg, where it was written out, handed to a messenger boy, who took a letter press copy thereof, and inclosed the message in an envelope and delivered it to plaintiff. *Held,* that the message delivered to plaintiff was not the original libelous message delivered by S., but was a mere copy of a copy thereof, so that the only libel was the message actually written out by the telegraph company's agent at Vicksburg and delivered to plaintiff.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 107.]

2. TELEGRAPHS—LIBELOUS MESSAGES.

A telegraph company should not receive for transmission a message which is libelous on its face.

3. LIBEL—MALICE—TELEGRAPH MESSAGES.

Where an alleged libelous message got into the way of transmission over defendant telegraph company's wires without any preliminary reception and authorization by defendant or its authorized agent, and thereafter was handled as a matter of routine business by agents acting in the regular line of business, who were bound to secrecy both by the statutes of the state and by rules of the company, and who had neither knowledge of the parties nor any particular knowledge of the contents of the message, or interest or improper motive, there was no sufficient evidence of malice to sustain an action for libel against the telegraph company.

4. SAME—PUBLICATION.

There is no publication of a libel when the words are only communicated to the person defamed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, §§ 107, 108.]

5. SAME.

Where a boy in the office of a telegraph company made a letter-press copy of a libelous telegram, such act did not constitute a publication of the libel without evidence that he read the libel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, §§ 107, 108.]

6. SAME—INSTRUCTIONS—DAMAGES.

Ann. Code Miss. 1892, § 1301, makes it a misdemeanor for a clerk, operator, messenger or other employé of a telegraph company to use or suffer

to be used, or willfully divulge the contents of a telegraph message to any one but the person for whom it was intended. *Held*, in an action against a telegraph company for publishing a libelous telegram, that it was error for the court to refuse to charge that as there was no evidence that any one knew the contents of the message except four employés of the telegraph company, who, under such section, could not disclose the contents without being guilty of a misdemeanor, and as there was no evidence that any of such employés ever had disclosed the contents of the message, the jury should take that fact into consideration in assessing damages, if any.

In Error to the Circuit Court of the United States for the Southern District of Mississippi.

The defendant in error is the editor and publisher of a newspaper in Vicksburg, Miss., called the "Vicksburg Evening Post." On October 31, 1901, he published in said paper a special telegram from Jackson, Miss., as follows:

"Jackson, Miss., Oct. 31.—Word reaches here from Oxford that Miss Lucy Leeton, the woman who filed a sensational breach of promise suit against former United States Senator W. V. Sullivan several months ago, will leave Washington in a few days to prosecute case, and that she will be represented in the proceedings by one of the ablest attorneys in the National Capital.

"Miss Leeton has been spending the last several weeks in the town of Oxford, Ex-Senator Sullivan's home, and an exciting affair occurred in the justices courtroom at that place Saturday, in which both of the participants in the breach of promise suit were parties.

"A civil proceeding against Miss Leeton was being tried, and, somewhat in contrast to his former attitude toward the woman, Ex-Senator was in the role of an attorney prosecuting the claim of a local drygoods firm for debt. Miss Leeton was represented by Hon. C. L. Sivley. The main point at issue was whether she was a nonresident, and therefore liable for attachment. During the proceedings one of the witnesses questioned the chastity of Miss Leeton, provoking some sulphurous language from her lips, and the witness drew a gun and threatened to kill her. Miss Leeton attempted to borrow a gun, evidently with the purpose of shooting her traducer, who had in the meantime been taken in charge by friends, and there was great excitement in the courtroom for several minutes, effectually breaking up the proceedings. Miss Leeton declared that the gun pointed at her by the witness belonged to Ex-Senator Sullivan, and of this she was positive, having kept the weapon for him three years."

On the 2d day of November, 1901, Ex-Senator W. V. Sullivan, of Oxford, Miss., handed in to the office of the Western Union Telegraph Company at Oxford, to be forwarded over the company's lines to Vicksburg, Miss., the following written message:

"Vicksburg Evening Post: Your article in issue of Thursday is a dirty lie as you know. Who is responsible? You nasty dog. Answer.
"W. V. Sullivan."

At the time this message was handed in to the office, there was no agent of the company present, but there was present one Scott Nichols, a boy, who assisted the agent in other lines of business. Nichols received the message and forwarded it by sound over the wire of the company to Memphis, Tenn. At Memphis the message was received by sound, there written out and placed on the transmission book from which it was taken by an agent of the company and forwarded to the agent at Vicksburg. In Vicksburg it was written out by the agent who received it, and handed to a messenger boy, who took a letter-press copy of the same, and inclosed it in a sealed envelope and thus delivered it to the defendant in error, who two days afterwards exploited the message as one from Sullivan, and gave his reply thereto in his evening paper.

This suit is one brought by Cashman, editor and publisher, against the telegraph company to recover damages to his fame, business, reputation, mental suffering, etc. The declaration, as amended, contains two counts, in

the first of which it is charged that "the telegraph company did wickedly and maliciously write and publish and cause to be written and published of and concerning the plaintiff a false, scandalous, malicious, and defamatory libel;" and in the second count the same charge is made with the same indefiniteness, but added thereto is the following: "Plaintiff says that the said false, scandalous, malicious, and defamatory libel was published by defendant contrary to the statute of the state of Mississippi with a view to insult the plaintiff, and to lead him to commit violence and a breach of the peace." The bill of exceptions contains all the evidence submitted on the trial of the case, showing substantially as above set forth.

After the evidence was all in, before the jury retired, plaintiff in error, through his counsel, requested the court to give to the jury, among other charges, the following special instructions: "(1) The court instructs the jury to find a verdict for the defendant. (2) The court instructs the jury for the defendant, that in fixing the amount of damage to be awarded to the plaintiff, by reason of contents of message complained of being made known to the employés of defendant, as hereinbefore stated, they should also take into consideration the fact that under section 1301 of the Annotated Code of Mississippi it is a misdemeanor for a clerk, operator, or messenger, or other employé of a telegraph company to use, or suffer to be used, or willfully to divulge to any one but the person for whom it was intended, the contents of a telegraphic message intrusted to him for transmission or delivery, or the nature thereof, punishable by a fine of not more than $200, or by imprisonment in the county jail not exceeding three months, or both; and, further, that the evidence fails to disclose that the contents of the message complained of was ever disclosed by any clerk, operator, or messenger or any other employé of the defendant. (3) The law presumes that every one acts rightfully and in accordance with law, and there is no evidence in this case to show that any one knew of the contents of the message in question, except four employés of the company, who, under section 1301 of the Annotated Code of Mississippi, could not disclose the contents of said message without being guilty of a misdemeanor, and upon conviction could be fined not more than $200, or by imprisonment in the county jail not exceeding three months, or both, and that there is no evidence in this case that said employés ever disclosed the contents of this message to any one, and the jury should take that fact into consideration in assessing damages, if any were suffered by it."

The court refused to give these instructions, and exceptions to such refusal were seasonably taken. There was a verdict and judgment for the plaintiff for $5,000 damages, and the defendant sued out a writ of error.

Murray F. Smith and J. Hirsh, for plaintiff in error.

O. W. Catchings and J. C. Bryson, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). The case shows that the defendant in error published in his paper in Vicksburg a libel on Ex-Senator Sullivan, just as a matter of news and a matter of general interest as he says, and having no reason to doubt its truth. Ex-Senator Sullivan, at Oxford, Miss., vigorously denying the truth of the article, and apparently thinking himself well informed as to his facts, responded with the telegraphic message heretofore set out. The defendant in error took time to deliberate and then published in his newspaper the two libels, with characteristic comments from his standpoint for the general information of the public. This seems to have ended the matter between the long distance belligerents, but not as to the telegraph company, whose agents Sullivan had made a tool of; for, on more deliberation, the defendant in error found that his feelings had been sore wounded, because the telegraph company's agents

149 F.—24

carried the message that Sullivan sent and which he himself had published in his newspaper. Hence this suit against the only innocent party in the matter.

The first count is for libel, and the second for publishing a libel in violation of a statute of Mississippi with a view to insult, etc. The effect of the statute of Mississippi, found in section 10, c. 2, of the Annotated Code of Mississippi of 1892, is as follows:

"All words which, from their usual construction and common acceptation are considered as insults, and lead to violence and breaches of the peace, shall be actionable; and a plea, exception, or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained; but this shall not deprive the courts of the power to grant new trials, as in other cases."

Although the same is made the basis of the second count in the declaration, it has not been argued either orally or in the briefs. The statute seems to be an innovation of the common law to the extent of making all words, which, from their usual construction and long acceptance, are considered insults and lead to violence and breaches of the peace when addressed to a person, actionable, although spoken without witnesses or other publication. If the statute applies to libels, which is doubtful—see Crawford v. Mellton, 12 Smedes & M. (Miss.) 328, where it is held that the insulting manner of saying the words is the gravamen of the action, it can be applied in this case only to the message actually written out by the company's agent at Vicksburg, and delivered to the defendant in error.

In the standard work of Townshend on Libel & Slander, we find the following:

"The subject-matter of a writing may be many times published at the same or at different and distinct places, and may have many publishers and many persons may be liable as publishers at one and the same time or at several times. The subject-matter of a writing cannot be republished apart and separate from a republication of the writing—the material written upon. Apart from the material on which the matter is inscribed it is impossible to republish the same subject-matter of a writing as it is to publish the same sound or original language or speech. If one copies the subject-matter of a writing upon another piece of material, the copy is no more the same subject-matter as the subject-matter copied from than is the republication of a sound an uttering of the same sound. The copy is not the same writing but another—a second and independent writing having the like but not the same subject-matter. A publication of this copy would have no other connection with the original than to contain the like subject-matter. The person who is liable for the publication of the first writing would not be liable for the publication of the second or copy, and the persons responsible for the publication of the second writing would not be responsible for the publication of the original writing. The publication of the second writing is neither a necessary nor a natural and proximate consequence of the publication of the first writing, nor is a publication of the first writing a necessary or a natural and proximate consequence of the publication of the second writing." Townshend on Libel, pp. 159, 160, § 117.

Now the libelous message of Sullivan was not delivered to, nor transmitted by, an agent for which the company is responsible. It was received by the agent in Memphis the same as if it had been read aloud by Scott Nichols. The message as transmitted and received and written out at Memphis was not the original libelous message, but a copy of

the same more or less exact. The same may be said of the message transmitted from Memphis to the agent at Vicksburg. That was a copy of a copy of Sullivan's original message, therefore the message written out in Vicksburg, copied by the messenger boy and delivered to Cashman in a sealed envelope, was the only libelous message for which the telegraph company, if liable at all, is responsible; and, in fact, that was the message declared on, and the only one offered in evidence on the trial of the case. The only circulation of this message other than delivery to the defendant in error was such as resulted from the copying of the same by the messenger boy in the company's office.

The question then presented by the first assignment of error is whether, under the facts proved, the telegraph company is liable either under the statute or at common law for the action of its agents at Vicksburg in writing out, copying, and delivering to the defendant in error the libelous message complained of. The telegraph company is a corporation engaged in the business of receiving and transmitting written messages for hire; and, like other common carriers, is liable for the acts of its agents in conducting its business. Its agents are bound to secrecy by rules of the company, and, in Mississippi, by statute with penalties. The company has no right to receive and transmit libelous messages. Its agents are limited in the same way. Like other common carriers, the telegraph company is bound to care and diligence in carrying on its business, and to take reasonable care, at least, not to injure others. If a message offered for transmission is anonymous or is libelous on its face, it should not be received and transmitted. The company should so instruct its agents, and the agents should so act.

We think that these propositions are not only sound, but that the good of society requires their full recognition. At the same time, it must be recognized that malice is an essential ingredient to the action of libel. See White v. Nicholls, 3 How. 286, 11 L. Ed. 591. Without malice express or implied the case fails.

The facts of the present case show that the libelous message complained of got into the way of transmission over the company's wires without any preliminary reception and authorization by the company or, its authorized agent, and thereafter was handled as a matter of routine by agents acting in the regular line of duty and business, who are shown to be bound to secrecy by the statutes of the state, and who are not shown to have had any knowledge of the parties or any particular knowledge of the contents of the message or any interest or improper motive, and from these circumstances it seems impossible to impute malice to the telegraph company. The law is well stated by Chief Justice Bronson, in Washburn v. Cooke, 3 Denio (N. Y.) 110. We quote as follows:

"In the common case of a libelous publication or the use of slanderous words, a charge of malice in the declaration calls for no proof on the part of the plaintiff beyond what may be inferred from the injurious nature of the accusation. The principle is a broad one. In all cases where a man intentionally does a wrongful act without just cause or excuse, the law implies a malicious intent towards the party who may be injured; and that is so even though the wrongdoer may not have known at the time on whom the

blow would fall. But, in actions for defamation, if it appear that the de-,fendant had some just occasion for speaking of the plaintiff, malice is not a necessary inference from what, under other circumstances, would be a slanderous charge; and it would often be necessary for the plaintiff to give every evidence of a malicious intent. There may be many of these privileged communications; as where the charge is made in giving the character of a servant, or in a regular course of discipline between members of the same church; in answering an inquiry concerning the solvency of a tradesman or banker, or where the communication was confidential between people having a common interest in the subject to which it relates. In these and other cases of the same nature, the general rule is that malice is not to be inferred from the publication alone. The plaintiff must go further and show that the defendant was governed by a bad motive, and that he did not act in good faith, but took advantage of the occasion to injure the plaintiff in his character or standing."

It is well settled that there is no publication when the words are only communicated to the person defamed. Newell on Slander & Libel, 228.

Was the delivery to the office boy who copied the message a publication? The evidence is that the boy made a letter-press copy—whether he could read or did read the message does not appear. The presumption is that he did not read it. To take a letter-press copy of a writing does not imply a reading of the writing. It is a purely mechanical process. See Odgers on Libel & Slander (4th Ed.) pp. 154, 155. In a copy made by hand the reading would seem to be necessary, and this we understand to be the case of Kiene v. Ruff, 1 Clark (Iowa) 482. As neither the delivery to the defendant in error nor the press-copying by the office boy was a publication of the libelous message, no publication was proved, and, considering that all malice, express or implied, in respect to the handling and transmitting of the libelous message of Sullivan, is rebutted and disproved by the facts in evidence, we conclude that the plaintiff in error was entitled on the trial in the court below to the instructed verdict requested.

If it be contended that this is a technical view of the case, it may be answered that the action seems to be one for a technical libel in which the real responsible offender is left out and an apparently innocent party is pursued, and, further, that if we take the case as one where Sullivan concocted the libel and delivered it to the company's agents for transmission, who transmitted it, the publication to all of the company's agents who handled the message in the strict line of business and duty was Sullivan's publication, contemplated by him, and was not in any just sense a publication by the company. The only way the company could receive, reject, transmit, or handle the message was by and through its agents. A libelous postal card is not published by the post office department when it permits or requires different agents to handle the same. All such handling is contemplated by the writer and the publication is his. And even if there was a technical publication of Sullivan's libel by transmitting the same after it was foisted into the company's business, there was an entire absence of malice, and in justice the plaintiff in error should not be mulcted in damages.

As there may be another trial of this case, we deem it proper to consider the assignment of error in regard to the Mississippi statute (section 1301, Ann. Code 1892), making it a misdemeanor for a clerk,

operator, or messenger, or other employé of a telegraph company to use or suffer to be used or willfully divulge to any one but the person for whom it was intended the contents of a telegraphic message, etc. This statute binds under penalties telegraphic operators and employés to secrecy as to messages intrusted to the telegraph companies for transmission. The presumption is that the law will be respected and observed. In case a libelous message shall be received and transmitted, the law puts bounds to the publication of the same. The extent of publication of a libel affects directly the quantum of damages. Under the peculiar and particular facts in this case, we are clear that the statute in question should have been given to the jury substantially as requested in the second instruction asked, as noted in the statement of the case.

The judgment of the Circuit Court is reversed, and the cause is remanded, with instructions to grant a new trial.