13383

TURNER v. MONTGOMERY WARD & CO. *ET AL.*

(163 S. E., 796)

254

*Messrs. Lee & Moise* and *C. B. Fullerton,* for appellants,

*Mr. L. D. Jennings,* for respondent,

April 12, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages based upon certain alleged slanderous statements made concerning the plaintiff; the delict charged being set out in the complaint in the following language:

"That on or about the 31st day of July, 1930, the defendant H. L. Hoover, as General Manager of the defendant Montgomery Ward & Company, accompanied by two ladies, one of said ladies being in the employ of the defendant Montgomery Ward & Company, came to the home of the plaintiff, and the said H. L. Hoover, as said manager, stated to the plaintiff in substance that she had come to the store of Montgomery Ward & Company on Saturday night, July 26th, 1930, and had purchased a bill of goods amounting to twenty-nine dollars, and had given in settlement of said bill her check for twenty-nine dollars, which check, when presented to the bank, had been turned down, because she had no funds in the bank with which to pay same. That she knew she had no funds in the bank when she gave the check; that she had obtained the twenty-nine dollars worth of merchandise under false pretenses, for which she could be and would be prosecuted unless she paid said check.

"As soon as the plaintiff was accused of giving said check, she immediately told the said H. L. Hoover that she

did not purchase any goods from Montgomery Ward & Company on said occasion; that she had not given any check; that the signature on said check was not hers; that the initials were not hers; but when she made this denial, the lady in the employ of the said Montgomery Ward & Company stated to the plaintiff that she was only making this denial for the purpose of getting out of paying said check, and stealing from Montgomery Ward & Company the merchandise which she had gotten; that it was no use for the plaintiff to deny giving the check, because she herself had waited upon her, and had sold her the goods. But notwithstanding this denial on the part of the plaintiff, the said H. L. Hoover continued to accuse her of obtaining said twenty-nine dollars worth of merchandise under false pretenses, with the purpose of cheating and defrauding Montgomery Ward & Company out of the same, and to threaten to prosecute the plaintiff unless she paid check."

The plaintiff further alleged that she neither purchased the goods nor gave the check in question; that the accusations and statements were made in the presence of her husband and others and were malicious and false, and were intended to impeach her character and good name and to expose her to disgrace, contempt, and ridicule. The defendants denied each and every allegation in the complaint; and alleged that on July 26, 1930, a lady purchased a bill of goods from the defendant company and in payment therefor gave a check, containing the signature of W. M. Turner, on the City National Bank of Sumter, S. C., for the sum of $29.00, which, when presented, the bank refused to pay; that in order to ascertain who had given the check, the defendant Hoover, together with Mrs. Arnold and Miss Gill, two of the clerks in the store, went to the home of the plaintiff and inquired whether the check was hers; that upon being informed that it was not, Hoover advised her that he was merely trying to find out who gave the check and was sorry to have troubled her. The defendants further allege that the inquiry was

made in good faith, without malice toward plaintiff, in discharge of a duty to ascertain who had had the transaction with the company, which the defendants had a right to do, and was qualifiedly privileged. .

The trial of the case in the Court of Common Pleas for Sumter County, July, 1931, before Hon. P. H. Stoll, presiding Judge, and a jury, resulted in a verdict for the plaintiff for $4,923.91. Motions for a nonsuit, a directed verdict, and a new trial, duly made by the defendants, were refused by the Court. From judgment entered on the verdict, this appeal is taken.

Upon call of the case for trial, and after lists of the jurors had been prepared and handed to the attorneys for striking, counsel for plaintiff asked the Court to place two of the jurors, Whitehead and Pate, on their *voir dire;* this request was granted, and the trial Judge, having questioned them, directed them to stand aside. The appellants complain that this was error, alleging that nothing appeared from the examination of these jurors which disqualified either of them to serve in the case.

This Court, in *State v. Sharpe,* 138 S. C., 58, 135 S. E., 635, 637, passing upon the question of the qualification of a juror, observed that "our Circuit Judges should be very careful to keep off juries persons who are related to the parties, or who, in any manner, have an interest in the result of the cause." And in *Fender v. Life Insurance Company,* 158 S. C., 331, 155 S. E., 577, 578, with reference to the same question, had this to say: "It is well recognized in this State that questions relating to the fitness of jurors to serve in cases are very much within the discretion of the trial Judge. This Court consistently refuses to reverse a case because of the Judge's rulings in matters thereabout, unless it plainly appears that there was an abuse of the discretion allowed to the Judge, and that such abuse of discretion may have resulted in harm to the losing party."

In the case at bar, the juror Whitehead, when placed upon his *voir dire,* stated that he had been in the employ of the attorneys for the defendants, as their

bookkeeper, for more than twenty years, and that he had heard the lawyers discuss this particular case among themselves, but knew nothing about the facts; that while he did not think his being in their employment would influence him in any way in reaching a verdict, it would be rather embarrassing, as he naturally wished to see his employers win all their cases. The juror Pate stated that he had been employed as an outside man by these same attorneys for about ten years, but that this fact would not influence him in any way, except to the extent that he would like to see the firm he was working for win. In these circumstances, there was no abuse of discretion on the part of Judge Stoll in standing aside these jurors. On the contrary, we think that he properly did so, and approve his action in the matter.

The main questions presented by the appeal are those arising out of the Court's refusal to direct a verdict for the defendants.

The record discloses that in July, 1930, the defendant Hoover, who was the manager of the defendant company's store at Sumter, S. C., accompanied by two ladies employed by the company as clerks, went to the home of one H. T. Turner, near Mayesville, in Sumter County. The plaintiff, the wife of Turner, testified that Hoover, upon his arrival there, inquired whether she was Mrs. W. M. Turner, and on being told that she was not, but was Mrs. H. T. Turner, replied, "You are Mrs. W. M. Turner  *  *  *  I have a check for you"; that he went to his automobile and got a check, and, exhibiting it to her, said: 'Here, this is your check.  *  *  *  You and your daughters gave this check to Montgomery Ward Company at ten o'clock Saturday night, got two dresses for $30.00, and you said make it $29.00, you gave this check.  *  *  *  This check is no good and you had no money in the bank and got these goods under false pretenses"; and that he would prosecute her if she did not pay the check. Richard Turner, Henry Turner, and Irene Turner, who were present, testified to the same

effect, namely, that Hoover stated that the plaintiff had got the goods under false pretenses and if they were not paid for he would prosecute her; one of them saying that Hoover added that obtaining goods under false pretenses was the same as stealing. The plaintiff further testified that, at the request of Hoover, she went out to the automobile and that one of the women who had come with him declared, in the face of denials, that plaintiff was the woman, who had made the purchase of the goods, and that she was trying to get out of paying the check and to get the goods under false pretenses.

It is contended, in the first place, that the alleged defamatory words were not actionable *per se* in that no crime was charged, and that, this being true, since there was no allegation or proof of any special damages, the trial Judge should have directed the verdict on these grounds. It is urged in support of this contention that there was no proof that the alleged accusation went so far as to charge plaintiff with fraudulent intent, and that the alleged defamatory words, even if spoken as contended for by plaintiff, did not charge a crime, for the reason that seven days had not elapsed between the date the check was given and the date it is alleged the slanderous charges were made; the bad check act giving to the drawer of a "bogus" check the privilege to pay the amount for which it is made within seven days after written notice.

In *Williamson v. Askin & Marine Company,* 138 S. C., 47, 136 S. E., 21, 23, this Court said: "To charge one with having committed the crime of obtaining goods or money under false pretenses is actionable *per se.* 18 A. & E. Ency. of Law (2d Ed.), 882; 36 C. J., 1202."

In 18 A. & E. Ency. of Law (2d Ed.), at page 989, we find: "It is well settled that if the words used to express the charge are such, in the sense in which they would naturally be understood, as to convey to the minds of those to whom they are addressed, or to the readers of the words, the impression that the plaintiff has committed a crime, the words

are actionable. It is only necessary that the words should, of themselves, or by reference to extraneous circumstances, be capable of the offensive meaning attributed to them."

In Odgers on Libel and Slander (1st Am. Ed.), 116, it is stated: "It is not necessary that the defendant should, in so many words, expressly state the plaintiff has committed a particular crime. * * * Any words which distinctly assume or imply the plaintiff's guilt, or raise a strong suspicion of it in the minds of the hearers, are sufficient."

In *Davis v. Johnston,* 2 Bailey, 579, the Court said: "The rule in verbal slander, as to the construction of words, is, that they are to be understood in their ordinary and popular meaning. If words are susceptible of two meanings, one imputing a crime, and the other innocent, the latter is not to be adopted, and the other rejected, as a matter of course. In such a case, it must be left to the jury to decide in what sense the defendant used them."

In 12 Ency. of Law, the writer says: "In order to constitute the offense there must be an intent to defraud at the time when the property or the signature to an instrument is obtained. To constitute an obtaining by false pretenses it is essential, equally as in larceny, that there shall be an intention to deprive the owner wholly of the property obtained. The intent is the gist of the offense, and ordinarily proof of the existence must depend upon the circumstances attending the transaction."

Under these well-established rules, we think that, while fraudulent intent is a necessary element of the crime of obtaining goods under false pretenses, the evidence adduced by the plaintiff in the case at bar required the submission to the jury of the question whether the language used by Hoover charged the plaintiff with the commission of such crime. The jury might reasonably have concluded that such charge was that plaintiff went into the store of the defendant company, knowing that she had no money

in the bank, purchased $29.00 worth of goods, and gave a "bogus" check in payment therefor, with the intent of cheating and defrauding the company out of its merchandise; in other words, the inference could be drawn that the charge was that she had acted dishonestly and fraudulently in connection with the alleged transaction, that the language used was so understood by those who heard it, and that even Hoover himself construed the charge made against plaintiff as being equivalent to a charge of the crime of stealing. Nor do we think that appellants' contention as to the seven-day provision in the check law is sound. This act (Section 1167, 1932 Code), makes it unlawful for any person to draw or utter a check, under the conditions named therein, with fraudulent intent, and provides that the fact of the giving of a check without funds in the bank on which it is drawn to meet it, and the further fact that the amount of the check is not paid by the drawer within seven days after notice, is *prima facie* evidence of fraudulent intent. We think this provision of the law merely creates a rule of evidence to the effect that the facts mentioned will, though standing alone, give rise to the presumption of fraudulent intent. Viewed from any angle, we think the trial Judge properly submitted this question to the jury, and they having found that the defendants' language charged plaintiff with the commission of a crime, it was actionable *per se,* and there was no necessity for any allegation or proof of special damages.

Appellants contend further that their motion for a directed verdict should have been granted for the reason that the alleged libelous communication was qualifiedly privileged. In *Fitchette v. Sumter Hardwood Company,* 145 S. C., 53, 142 S. E., 828, 834, this Court discussed somewhat at length the question of qualified privilege. It will not be necessary to repeat here all that was said in that case. We refer, however, to what was there quoted from the dissenting opinion of Mr. Justice Cothran in *Switzer v. Express Company,* 119 S. C., 237, 112 S. E., 110, 26 A. L. R., 819, as stating, in

succinct form, the issues which so frequently are to be determined when the defense of qualified privilege is presented: "Was the 'communication,' alleged to have been slanderous, one of qualified privilege; this question depending upon the further question whether or not, the 'occasion' being shown to have been one of qualified privilege, the occasion was so abused, or its bounds so exceeded by ill motive, as to deprive the communication of the qualifiedly privileged character which is presumed by the fact of its utterance upon a qualifiedly privileged occasion?"

The Court then went on to say: "It is not enough to show that the occasion was one of privilege, but it must also appear that the communication itself was made in good faith and was privileged as made."

Quoting from Newell on Slander and Libel (4th Ed.), 418: "But it must be remembered that, although the occasion may be privileged, it is not every communication made on such occasion that is privileged. It is not enough to have an interest or duty in making a communication; the interest or duty must be shown to exist in making the communication complained of. A communication which goes beyond the occasion exceeds the privilege."

And from 36 C. J. at page 1248: "The protection of the privilege may be lost by the manner of its exercise, although the belief in the truth of the charge exists. The privilege does not protect any unnecessary defamation. In order for a communication to be privileged, the party making it must be careful to go no farther than his interests or his duties require."

With respect to the question of malice the Court said: "Ordinarily the publication of defamatory words actionable in themselves carries a *prima facie* implication of malice, and the plaintiff is not required to produce proof of malice beyond proof of the publication itself, but where the occasion is privileged there is a '*prima facie* presumption to rebut the inference of malice' and the burden is on the plaintiff to show malice in fact."

And held, on the record in the case before it: "As to the actual malice there was sufficient testimony to go to the jury, who, in deciding that question, might have recourse both to the language of the communication itself and to the extrinsic evidence. It was for the jury to say, too, whether the language used went further than the occasion required, if the occasion was privileged."

In the instant case we think that, as in the *Fitchette* case, there was sufficient testimony to go to the jury both as to actual malice and as to whether the language used went further than the occasion required. On a motion for a directed verdict the testimony must be taken, of course, most favorably to the plaintiff; if the jury accepted the testimony offered by the plaintiff as to the language used, the circumstances under which the communication was made, etc., then they might very seasonably have found that the defense of qualified privilege was not established. They might have concluded, for instance, that when Hoover asked the plaintiff about the check, and she denied giving it, the privilege was at an end, and he was not justified in accusing her then and there, in the presence of several bystanders, of giving a check on a bank in which she had no funds as payment for the dresses purchased and in getting "these goods under false pretenses."

One of defendants' grounds for a new trial was that the "verdict shows on its face that it was a chance or quotient verdict"—referring to the fact that it was for an odd amount, $4,923.91. The question of "a quotient verdict" was considered somewhat fully in the recent case of *Wannamaker v. Traywick,* 136 S. C., 21, 134 S. E., 234, 238, in which some of our older decisions were cited and discussed. In that case the trial Judge refused to grant a new trial on this ground, although the showing there made was much stronger than in the present case. This Court, on appeal, in sustaining the lower Court, said: "Jurors are presumed to do their duty and there is a presumption that they

have regarded their oaths. The Court would not be justified, except upon a clear showing, to hold contrary to these presumptions."

Under the showing made, we deem it unnecessary to further discuss the question. The trial Judge properly refused the motion on this ground. See *Sheppard v. Lark,* 2 Bailey, 576; *Finch v. Finch,* 21 S. C., 342; *Ladshaw v. Southern Railway Company,* 90 S. C., 462, 73 S. E., 879.

The appellants also contend that the Court committed ██ error in refusing their motion for a new trial, made upon the ground that the amount of the damages assessed by the jury was so excessive and unreasonable as to show that it was the result of caprice or prejudice. This contention is without merit. In the view of the evidence taken by the jury, the charge was a serious one, and the matter of fixing the amount of damages was peculiarly within their province. 17 R. C. L., 444. Furthermore, the granting of a new trial on this ground is in the discretion of the trial Judge, and unless there is abuse of discretion, which is not shown in the present case, this Court will not interfere. See *Brewer v. Railway Company,* 149 S. C., 454, 147 S. E., 596.

By their seventh exception, appellants impute error ██ to the trial Court in telling the jury that they should award the plaintiff substantial damages in the absence of malice. It is true that at one point the trial Judge, after instructing the jury that if they found that the defendants had charged the plaintiff with obtaining goods under false pretenses, that would be slander *per se,* told them that if they reached the conclusion there was no malice they might find for the plaintiff such substantial damages as they thought would be warranted by the reproach heaped upon her. A reading of the context clearly indicates that the charge objected to, if correctly reported, was inadvertently made, as it is in direct conflict with the instructions given in immediate connection therewith. However this may be, if the objectonable statement, standing alone, was erroneous, we

think that, when considered with the entire charge, which was a fair and correct statement of the law in the case, it was harmless.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.