## VON MEYSENBUG et al. v. WESTERN UNION TELEGRAPH CO.
### Civil Action No. 526 J.

District Court, S. D. Florida,
Jacksonville Division.

Feb. 9, 1944.

William W. Judge and Curtis Basch, both of Daytona Beach, Fla., for plaintiffs.

Loftin, Calkins, Anderson & Scott and Harold B. Wahl, all of Jacksonville, Fla., for defendants.

STRUM, District Judge.

Plaintiffs, husband and wife, sue defendant telegraph company for libel, based upon its transmission of the following telegram from New Orleans, La., to Daytona Beach, Fla.:

"New Orleans, La. July 3
"Mimi,
"Care Mrs John E Pierce
"Please deliver 420 Goodall St
"Daytona Beach Flo
"Last year we were in Daytona with our Mama and Daddie if you stopped committing adultery with our Daddie he could pay our dentist oculist music teachers and education and the alimony he owes us now and since 1935 and God will punish you for taking our Daddie and making him do wrong.
"The Von Meysenbugs."

The telegram was apparently sent by or on behalf of a former wife of Ludo Von Meysenbug and the children of that marriage, which had been theretofore terminated by divorce. The first wife and the children apparently do not recognize the

validity of the divorce secured by Ludo Von Meysenbug, nor his subsequent marriage to the coplaintiff. Hence the charge of adultery.

The message was accepted and transmitted in the ordinary routine of defendant's business. It was delivered, as directed, at 420 Goodall Street, Daytona Beach, Fla., where it was opened by a "Mrs. Miner," who resided there and who mistakenly assumed that the message was intended for her. The addressee of the message did not in fact reside at that address, although that was the business address of Mrs. John E. Pierce, in whose care it was directed.

Although the complaint charges that in transmitting the message, the telegraph company acted with "gross negligence and utter heedlessness," it is conceded that the defendant acted wtihout actual malice, and had no knowledge or notice of lack of privilege between the sender and the addressee of the telegram. The sole question is whether or not from the face of the telegram itself, liability is prima facie established by the transmission and delivery of the message in the manner stated, without further proof of malice or notice of lack of privilege.

█ Ordinarily, a telegraph company in accepting and transmitting a message is entitled to a qualified privilege. This privilege rebuts any presumption of malice from the mere fact that the message is libelous as between sender and addressee.

█ The immunity of a telegraph company from liability to a defamed person when it transmits a libelous message must be broad enough to enable the company to render its public service efficiently and with dispatch. Speed is the essence of such service. Telegraph companies are required by law to accept and promptly transmit lawful messages tendered to them, with substantial penalties for failure to promptly and impartially perform that service. Federal Communications Act 1934, 47 U.S.C.A. § 201 et seq. If such companies are to handle, with expedition and dispatch, the great volume of business entrusted to them, it is obvious that their agents can not spend much time pondering the contents of messages with a view to determining whether or not they are defamatory, and if so, whether or not the sender might be privileged. To exhaustively inquire into such matters would require the services of experts, and sometimes endless investigation. The conclusions reached would often be clouded by doubt. Manifestly, therefore, a telegraph company's privilege can not be restricted to cases in which the sender was in fact privileged, as often he may be. It must be broader than that. The modern rule is that in order to justify a recovery the party libeled must produce evidence of actual or express malice, bad faith, or knowledge of lack of privilege on the part of the telegraph company, that is, that the sender was acting, not in the protection of a legitimate or privileged interest, but in bad faith for the purpose of traducing another. Here, there was no actual malice, and nothing to put the telegraph company on notice that the statements contained in the message were not true, or that as between sender and addressee, it was not a privileged communication. O'Brien v. Western Union, 1 Cir., 113 F.2d 539; Flynn v. Reinke, 199 Wis. 124, 225 N.W. 742, 63 A.L.R. 1113; Klein v. Western Union, 257 App.Div. 336, 13 N.Y.S.2d 441, appeal dismissed 281 N. Y. 831, 24 N.E.2d 492; Western Union v. Cashman, 5 Cir., 149 F. 367, 9 L.A.,N.S., 140, 9 Ann.Cas. 693; Am. L. Inst., Restatement of Torts, sec. 612. Cf. Layne v. Tribune Co., 108 Fla. 177, 146 So. 234, 86 A. L.R. 466, an action against a newspaper reproducing an article compiled by a news gathering agency. It was there held that to recover for libel predicated on publication of such a news dispatch, of which the publisher is not the author, plaintiff must show wantonness, recklessness, carelessness, or bad faith.

█ Plaintiffs do not rely on the publication of the libelous matter to its own employees, involved in the mere transmission of the message, as indeed they could not. Western Union v. Cashman, 5 Cir., 149 F. 367, 9 L.R.A.,N.S., 140, 9 Ann.Cas. 693. Plaintiffs rely entirely upon the alleged wrongful publication to Mrs. Miner. Defendant delivered the message as directed, at 420 Goodall Street. It was opened there, and thus published by the unauthorized act of a third party, Mrs. Miner, for which the defendant is not responsible.

█ The Court holds that the contents of the telegram, and the method of its delivery, standing alone, are insufficient to impute malice and thus destroy the qualified privilege of the defendant in transmitting it. Without further proof, which is here lacking, plaintiffs can not recover.

Judgment for defendant.