**LESESNE v. WILLINGHAM et al.**
**Civ. A. No. 2047.**

United States District Court
E. D. South Carolina, Columbia Division.
April 25, 1949.

McLeod & Singletary, of Columbia, S. C., for plaintiff.

Nelson, Mullins & Grier, of Columbia, S. C., for defendant.

WYCHE, District Judge.

The plaintiff sues the defendant Western Union Telegraph Company and H. G. Willingham for libel based upon the telegraph company's acceptance, transmission and delivery of two telegrams over its usual and customary channels of local transmission in the City of Columbia, South Carolina.

The telegram upon which plaintiff's first cause of action is grounded is as follows:

"LDA6 NL PD Columbia SoCar 26 1946
 Oct 26 PM 10 45
Thomas P. Lesesne
 2207 Murray St Columbia So Car
Although you are an administrative assistant of the South Carolina State Board of Health and a New Deal tick that does not give you license to run through the streets of Columbia and kill women Turn over in bed and regret your wrong doings. Although you have tried to kill the case with political pull we are determined to pull you out into the spot light—
 H. G. Willingham."

Webster's New International Dictionary, Second Edition, Unabridged, defines the word "tick" as follows: "1. Any of numerous arachnids of the order Acarida but larger than the ordinary mites, which attach themselves to a man and many animals and birds, and suck their blood. Their young have six legs, the adults eight. Some species are vectors of specific diseases of man and other animals. Ixodidae is the typical family. 2. Any of certain degraded parasitic dipterous insects, as the bird ticks, sheep tick, and bat ticks. 3. An offensive person; a pest."

The telegram upon which plaintiff's second cause of action is founded is as follows:

"CM6 NL PD Columbia SoCar Oct 27
Dr James A Hayne—
You nor no other Democratic politician is going to be big enough to fix the death that occurred at Wheat and Wood Streets

caused by your admistrative assistant Thomas Lesesne. I have reported this to the Civil Rights Section of the United States Dept of Justice. After receiving cover all tactics from Highway Patrol and Columbia Police Dept.

H G Willingham. 902A"

The amended complaint alleges as to the first cause of action, "that the Defendant, Western Union Telegraph Company did accept said telegram for transmission and did *willfully transmit* same over its usual and customary channels of local transmission, thereby publishing it to those (of) its employees who had occasion to handle same, *well knowing* that it was *apparently not privileged* and was *libelous* and *defamatory upon its face,* in that it charged and impugned this Plaintiff, among other things, with the commission of a serious crime, and in the course of such transmission of the said telegram to this Plaintiff, did deliver it as (at) his home where it was first opened and *read by his wife,* * * *. That the defamatory and libelous statements as contained in the above quoted telegram were *willfully, wantonly, maliciously* and *unlawfully* uttered, written and published by the *Defendants* of and concerning this Plaintiff," etc. (Emphasis added.)

The amended complaint alleges as to the second cause of action, "that the Defendant, Western Union Telegraph Company, did accept said telegram for transmission and did *willfully transmit* same, thereby publishing it to those persons participating in its transmission, *well knowing* that it was *apparently not privileged* and that it was *libelous and defamatory upon its face* in that it charged and impugned this Plaintiff, among other things, with the commission of a serious crime and in the course of its transmission did forward and deliver same to the addressee, Dr. James A. Hayne, by whom it was read and then referred to Dr. Ben F. Wyman as Director of the South Carolina Health Department. That the defamatory and libelous statements as contained in the above quoted telegram were *willfully, wantonly, maliciously* and *unlawfully* uttered, written and published by the *Defendants* of and concerning this Plaintiff and that in consequence thereof and as the proximate result

therefrom, this Plaintiff has been caused to suffer" etc. (Emphasis added.)

The case is now before me upon defendant Western Union Telegraph Company's motion to dismiss as to it upon the ground that the complaint fails to state a claim against this defendant upon which relief can be granted.

Both telegrams were transmitted within the City of Columbia, South Carolina. I must, therefore, be governed by the law of South Carolina in disposing of the motion.

It seems to be well settled in this State that any words which falsely or maliciously charge the commission of a crime, or which distinctly assume or imply one has committed a crime, or which raise a strong suspicion in the minds of hearers or readers, that one has committed a crime, or which plainly and falsely charge the contraction of a contagious disease, adultery or a want of chastity, or unfitness in the way of a profession or trade, or any written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous, are actionable per se. Duncan v. Record Publishing Company, 145 S.C. 196, 143 S.E. 31; Turner v. Montgomery Ward & Co., 165 S.C. 253, 163 S.E. 796; Lily v. Belk's Department Store, 178 S.C. 278, 182 S.E. 889; Galloway v. Cox, 172 S.C. 101, 172 S.E. 761, 762; Sandifer v. Electrolux Corporation, 4 Cir., 172 F.2d 548, 550. In the last cited case it was said by the Circuit Court of Appeals of the Fourth Circuit: "And as a logical matter it should be immaterial whether the commission of a crime is charged positively and directly by words of clear and unmistakeable meaning or only indirectly and by means of innuendo. So long as the words are understood by third persons to make the charge, the effect from the standpoint of damage done may be calculated to be the same. "It has, in fact, been noted several times by the South Carolina courts that a hidden charge made by insinuation and innuendo may inflict graver injury and injustice than a direct and specific accusation which, if false, may be more easily met and refuted."

But the defendant contends that the amended complaint shows on its face that the two telegrams were privileged, and therefore, as a matter of law, are not actionable, unless plaintiff can prove actual malice.

Under the South Carolina decisions it has been held that: Privileged communications are of two kinds, absolute, and qualified; when the communication is absolutely privileged no action will lie for its publication, no matter what the circumstances under which it is published may be; when qualified, however, a plaintiff may recover if he shows that the libel was actuated by malice; in determining whether or not a communication is qualifiedly privileged, regard must be had to the occasion and to the relationship of the parties; when one has an interest in the subject matter of a communication, and the person or persons to whom it is made has a corresponding interest, every communication honestly made in order to protect such common interest is privileged by reason of the occasion; the statement, however, must be such as the occasion warrants and must be made in good faith to protect the interest of the one who makes it and the persons to whom it is addressed; a communication to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable and proper cause; the protection of privilege extends generally to communications made in the prosecution of an inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing the criminal to punishment; ordinarily, proof of a defamatory publication, charging another with the commission of a crime, malice is presumed, but in a qualified privileged communication the burden is cast upon the plaintiff to show malice in fact; actual malice, resting, as it must, upon the libelous matter itself, and the surrounding circumstances, to prove fact and motive, is a question to be determined by the jury; the courts of other jurisdictions differ as to the extent of the trial court's power and duty to determine whether such prima facie showing of privilege has been made in a given case as will require the proof of express malice, but under the settled law of this State there is no room for doubt as to the respective provinces of court and jury; the privileged "occasion affords a prima facie presumption to rebut the inference of malice, and the plaintiff would fail without further proof," the presumption thus raised is a presumption or inference of fact sanctioned by law, to be applied by the jury under appropriate instructions of the court; if actual malice is shown the protection of privilege is destroyed; a communication which goes beyond the occasion exceeds the privilege; the protection of the privilege may be lost by the manner of its exercise, although the belief in the truth of the charge exists; the privilege does not protect any unnecessary defamation; in order for a communication to be privileged, the party making it must be careful to go no farther than his interests or his duties require; if a defense of qualified privilege is not sustained, malice may be presumed from publication of words actionable per se. Bell v. Bank of Abbeville, 208 S.C. 490, 38 S.E.2d 641; Smith v. Youmans, 3 Hill, 85, 21 S.C.L. 43; Switzer v. American Ry. Express Co., 119 S.C. 237, 112 S.E. 110, 26 A.L.R. 819; Bosdell v. Dixie Stores Co., 168 S.C. 520, 167 S.E. 834; Turner v. Montgomery Ward & Co., 165 S.C. 253, 163 S.E. 796. Qualified privilege is an affirmative defense and a defendant cannot get the benefit of this defense unless he sets it up in his answer as an affirmative defense. Rivers v. Florence Printing Co., 141 S.C. 364, 139 S.E. 781; Bell v. Bank of Abbeville, supra, 208 S.C. 490, 38 S.E.2d 641. To make the defense of privilege complete, good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner and to proper parties only, must appear. The absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying upon the privilege; all these questions are, however, questions of fact for the jury to determine, according to circumstances of each case, under appropriate instructions from the court. Switzer v. Am. Ry. Express Co., supra, 119 S.C. 237, 112 S.E. 110, 26 A.L.R. 819. It is true, of course, that a non-suit may be granted, or a verdict directed, when the evidence establishes a defense to the action, but in that

case the evidence in support of the defense must be open to no other reasonable inference than the truth of the essential elements of fact constituting the defense. Vermillion v. Woman's College of Due West, 104 S.C. 200, 88 S.E. 649, 650.

It has been said that while no telegraph company can assume to act as censor as to the language of messages or the purposes they are intended to accomplish, it is the right and duty of a telegraph company to refuse to transmit a message which, upon its face, is obscene, profane or clearly libelous and manifestly intended for the purpose of defamation; that a message may contain matter which if false is libelous and still be proper to be transmitted as where the object is to secure the arrest of a person charged with crime, or to give information to one having an interest in the matter or anything of a privileged character; in any such case the telegraph company could not refuse to send the message and would not be responsible if a message which, for aught that appeared on its face, might be privileged, were in fact sent with a defamatory or mischievous intent. Nye v. Western Union Tel. Co., C.C., 104 F. 628; Western Union Telegraph Co. v. Cashman, 5 Cir., 149 F. 367, 9 L.R.A.,N.S., 140, 9 Ann.Cas. 693.

In Peterson v. Telegraph Co., 65 Minn. 18, 67 N.W. 646, 647, 33 L.R.A. 302, the court said: "Where a proffered message is not manifestly a libel, or susceptible of a libelous meaning, on its face, and is forwarded in good faith by the operator, the defendant cannot be held to have maliciously published a libel, although the message subsequently proves to be such in fact. In such a case the operator cannot wait to consult a lawyer, or forward the message to the principal office for instructions. He must decide promptly, and forward the message without delay, if it is a proper one, and for any honest error of judgment in the premises the telegraph company cannot be held responsible. But where the message, on its face, is clearly susceptible of a libelous meaning, is not signed by any responsible person, and there is no reason to believe that it is a cipher message, and it is forwarded under such circumstances as to warrant the jury in finding that the oper-

ator, in sending the message, was negligent or wanting in good faith in the premises, the company may be held to have maliciously published the libel. A publication under such circumstances is not privileged."

In 62 Corpus Juris, § 193, at page 171, it is said: "It seems to be generally held that, since a telegraph company is not obliged to receive for transmission a message which is obviously libelous, and since the transmission of such a message is generally deemed to be a technical publication of the libel by the company, the company may be held liable for the transmission of a message libelous on its face. However, as the company cannot arbitrarily refuse to receive messages for transmission, and the nature of its business requires prompt action, if the message under the circumstances is reasonably susceptible of a construction which would make it either not libelous or privileged, it is the duty of the company to transmit the message, and it will not be liable for so doing."

A telegraph company need not, and should not, accept a message which on its face is clearly libelous, unless the message is reasonably capable of an innocent construction, or might be reasonably supposed to be a privileged communication. 62 Corpus Juris, § 159, at page 140.

There are no South Carolina Supreme Court decisions regarding the liability of a telegraph company for the transmission and delivery of a libelous message, but after careful consideration of the decisions of other jurisdictions, both state and federal, it seems to me that the rule laid down by the American Law Institute in Restatement of the Law of Torts is the most reasonable and logical rule and is supported by the principles announced by the South Carolina Supreme Court, as well as by the great weight of authority, both state and federal. In Restatement of the Law, Torts, § 612, at page 296, the general rule is thus stated: "A public utility whose duty it is to transmit messages for the public is privileged to transmit a message although it is obviously defamatory, unless the agents who transmit it know or should have reason to know that the sender is not privileged to send it." In other words, a telegraph company is liable in transmitting and de-

livering a defamatory message if the transmitting agent of the telegraph company happened to know, or "should have reason to know", that the message was spurious, *or* that the sender was acting, not in the protection of a legitimate or privileged interest, but in bad faith, and for the purpose of defaming another. See, 63 A.L.R. 1118 et seq. Cf. O'Brien v. Western Union Telegraph Co., 1 Cir., 113 F.2d 539, and Von Meysenberg v. Western Union Telegraph Co., D.C.S.D.Fla., 54 F.Supp. 100.

 Under the foregoing authorities it is my opinion that the complaint alleges a claim upon which relief may be granted against the telegraph company in each cause of action. The telegram in the first cause of action charges plaintiff with the commission of a crime; the words used also tend to degrade him, to reduce his character or reputation in the estimation of his friends or acquaintances or the public, to disgrace him, and to render him odious, contemptible, or ridiculous, and charge him with unfitness to perform the duties of his office or employment and are prejudicial to plaintiff's office and profession. The telegram alleged in the second cause of action charges the plaintiff with the commission of a crime. The words in the telegrams in both causes of action are actionable per se; sufficient publication and actual malice are alleged in both actions.

 If it should be decided upon the trial of the case that the telegraph company was not privileged to transmit the alleged libelous messages, the publication to the employees of the telegraph company would be sufficient to render the libel actionable, that is, if the defense of qualified privilege should not be sustained it follows that the transmission of the alleged libelous messages through the employees of the telegraph company would supply the element of publication; if it should develop upon the trial that the agent of the telegraph company was not privileged because of actual malice to transmit the alleged libelous messages, the publication to the employees of the defendant telegraph company would be sufficient to render the libel actionable. If it should develop upon the trial of the case that the transmitting agent of the

telegraph company knew, or had reason to know, that the telegrams were spurious, or that the sender was acting not in the protection of a legitimate or privileged interest, but in bad faith and for the purpose of defaming the plaintiff, malice will be presumed in the publication of the telegrams by the telegraph company. Bell v. Bank of Abbeville, supra, 208 S.C. 490, 38 S.E.2d 641.

 In the first cause of action it is also alleged that publication was made to the wife of the plaintiff by the delivery of the telegram to her at their residence. Telegrams delivered to the home of a person are frequently messages of sorrow or joy, misfortune or good fortune. A telegraph company is presumed to know, or to have good reason to believe, that the delivery of a telegram to a wife, addressed to her husband at their residence, will be read by the wife, in the absence of her husband. Riley v. Askin & Marine Co., 134 S.C. 198, at page 205, 132 S.E. 584; McClain v. Reliance Life Ins. Co., 150 S.C. 459, at page 475, 148 S.E. 478. A wife is sufficiently a third person to make a communication to her of words defamatory of her husband a publication in law. Newell on Slander and Libel, Fourth Edition, § 183, at page 230. Publication of a libelous message to a wife is calculated to do as much, if not more, damage than publication to another.

 As to the second cause of action, publication is alleged to have been made to the addressee by whom it was read and then referred to Dr. Ben F. Wyman as Director of the South Carolina Health Department, and is sufficient in itself to allege publication to make the telegram actionable.

The telegraph company relies upon the cases of O'Brien v. Western Union Telegraph Co., 1 Cir., 113 F.2d 539, and Von Meysenberg v. Western Union Telegraph Co., D.C.S.D.Fla., 54 F.Supp. 100. There may be a slight difference between the principles I have followed here and the principles announced by these two cases, but I think I should point out that the decision of the Circuit Court of Appeals in the case of O'Brien v. Western Union Telegraph Co., supra, is bottomed upon a con-

struction of the Communications Act of 1934, 48 Stat. 1064, 47 U.S.C.A. §§ 35, 151 et seq., and the regulations thereunder by the Federal Communications Commission. In this decision it is said [113 F.2d 541], "In determining the privilege of the defendant to transmit the libellous message in question, we are not bound by the common law or statutes either of Massachusetts, where the message originated, or of Michigan, where it was delivered. The telegram was an interstate message. It was transmitted by common carrier engaged in interstate communication by wire. The telegraph company is subject to the Communications Act * * *." The opinion in Von Meysenberg v. Western Union Telegraph Co., supra, is likewise bottomed upon the Communications Act of 1934, and upon the decision in the O'Brien case.

In the instant case the telegrams were transmitted and delivered within the city limits of Columbia, South Carolina, and I am, therefore, not governed by the Communications Act, but by the South Carolina decisions and the principles announced therein. In applying these principles to the motion to dismiss, it is my opinion that the motion should be denied, and it is so ordered.