13094

TRUE v. SOUTHERN RAILWAY CO. *ET AL.*

(157 S. E., 618)

October, 1929.

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.*, for appellant,

458

*Messrs. Frank G. Tompkins* and *Frank B. Gary, Jr.,* for respondent,

March 17, 1931.

The opinion of the Court was delivered by Mr. Justice Cothran.

This is an appeal from an order of nonsuit by his Honor Judge Shipp. The action was for damages on account of alleged false malicious and libelous statements contained in certain certificates and affidavits claimed to have been circulated and published concerning the plaintiff, which he alleged charged him with dishonesty and stealing, in his posi-

tion as conductor, resulting in damage to his reputation and in his discharge.

It appears that on November 9, 1925, A. H. Plant, assistant to the vice president of the defendant company, wrote to the plaintiff a letter marked "personal," received by the plaintiff on December 4, 1925, as follows:

"As you are aware, checks are being made by the company of transportation revenue returns—both tickets and cash fares—made by its conductors.

"Investigation recently made shows an apparent irregularity in your cash fare returns as follows:

"Train No. 23, October 27, 1925. Charlotte to Columbia: It is reported that passengers rode the above train between the points shown below, paid cash fares and did not receive receipts:

"Griffith to Pineville; Griffith to Rock Hill; Carhartt to Rock Hill; Chester to Blackstock; Winnsboro to State Park.

"No such fares appear on your cash fare reports for that train and date.

"The record indicates that prior to the investigation referred to in October, three similar irregularities were found in your transportation returns.

"These checks now being made will be continued and if the apparent irregularities do not cease, the entire record must be submitted to the proper officer of the operating department for such action as may be justified, which action will be based upon the entire record.

"The general chairman of the Order of Railway Conductors has been advised that this caution would be given and has requested that he be furnished a copy of it which is agreeable to us, if you do not object. Unless we hear from you to the contrary, within fifteen (15) days from this date, it will be assumed that there is no objection on your part, and we will furnish a copy hereof to such general chairman."

To this letter the plaintiff made no reply, and a copy of it was sent to the chairman of the Order of Railway Conductors to which the plaintiff belonged.

On July 13, 1928, W. F. Cooper, superintendent of the company, wrote a letter to the plaintiff as follows:

"Investigation having developed what appear to be irregularities in the handling of transportation on trains entrusted to your charge, you are hereby notified to attend an investigation to be conducted by Mr. J. H. Stanfiel, assistant to vice-president, at my office on Monday, July 16, 1928, commencing at 9:00 a. m. The irregularities in question occurred on the following trains and dates: (Here followed a list of the 'irregularities,' with the dates and train numbers when and on which they were supposed to have occurred, closing with this statement) : If it is your desire to have a representative with you at the investigation in question we shall be glad if you will arrange for such person as you desire to represent you to be with you at the place, on the date and at the hour mentioned above."

In compliance with this notice the plaintiff appeared at the office of the superintendent of the railway in Columbia, S. C., on July 16, 1928. There were present at the hearing: J. H. Stanfiel, assistant to vice-president; A. H. Plant, assistant to vice-president; W. F. Cooper, superintendent; J. W. Connelly, chief of police; L. F. DeRamus, general superintendent; Luther Gordon, chief of police; J. F. Trazzare, special agent. At that meeting, Mr. Moore, general chairman of the Order of Railway Conductors, represented Conductor True. Mr. Moore, during the investigation, asked questions on behalf of the plaintiff.

The investigation was called in response to the obligation of the company under its agreement with the Order of Railway Conductors which provided:

"Conductors, flagmen, baggagemen, brakemen, yardmen and switchtenders will not be discharged or demerited without an investigation, which will be made by proper officer

within five days, if possible, and in their presence. They will have the privilege of bringing to the investigation to assist them a conductor, flagman, baggageman, brakeman, yardman or switchtender, as the case may be, of their own selection, provided such person is employed and is in good standing on the division. If found blameless, they will be paid for the time lost. If discharged, they will be furnished with a letter showing cause of dismissal, term of service and capacity in which employed. If demerited, they will be furnished with a written notice of same."

If the company had discharged the plaintiff without complying with this provision, it would have subjected itself to a suit for damages.

The investigation then proceeded in an orderly fashion; no objection was interposed by the plaintiff upon any ground; he was present represented by the chairman of his order, who was given full opportunity of examination and cross-examination; he made no request for time and expressed his ability to meet all charges of which he was fully informed. They were specifically stated and thoroughly threshed out by statements supported by reports and affidavits and every opportunity given the plaintiff to answer them.

It will be observed that the basis of the plaintiff's claim to libel and slander was the matter brought out in the investigation, instituted in his interest and according to the provisions of the agreement with his order.

The ruling of his Honor, Judge Shipp, in passing upon the motion for nonsuit is clear and comprehensive; it meets with the approval of this Court and will be reported.

That the communications during the investigation were privileged appears beyond controversy. *Switzer v. Exp. Co.,* 119 S. C., 237, 112 S. E., 110, 26 A. L. R., 819, 25 Cyc., 393, Note 46, L. R. A. (N. S.), 104; *Billings v. Fairbanks,* 136 Mass., 177; *Palmer v. Hammerston,* Cab. & El., 36; *Laughlin v. Schnitzer* (Tex. Civ.

App.), 106 S. W., 908; *Warr v. Jolly,* 6 Car. & P., 497; *Haynes v. Leland,* 29 Me., 233; *Patterson v. Frazer* (Tex. Civ. App.), 79 S. W., 1077; *Louisville Times Co. v. Lancaster,* 142 Ky., 122, 133 S. W., 1155; *Beeler v. Jackson,* 64 Md., 589, 2 A., 916; *Middleby v. Effler* (C. C. A.), 118 F., 261; *Christopher v. Akin,* 214 Mass., 332, 101 N. E., 971, 46 L. R. A. (N. S.), 104; *Chalkley v. R. Co.,* 150 Va., 301, 143 S. E., 631; *Polk v. R. Co.,* 156 Ark., 84, 245 S. W., 186, 29 A. L. R., 220; *Gattis v. Kilgo,* 140 N. C., 106, 52 S. E., 249; Newell on Libel and Slander, 477; *Missouri Pac. R. Co. v. Richmond,* 73 Tex., 568, 11 S. W., 555, 4 L. R. A., 280, 15 Am. St. Rep., 794; *White v. Nicholls,* 3 How., 266, 11 L. Ed., 591; *Moore v. Manufacturers' Nat. Bank,* 123 N. Y., 420, 25 N. E., 1048, 11 L. R. A., 754; *Lewis v. Chapman,* 16 N. Y., 369; *Lewis v. Carr,* 178 N. C., 578, 101 S. E., 97; *Adam v. Ward* (Eng.), Ann. Cas., 1917-D, 249; *Elmore v. R. Co.,* 189 N. C., 658, 127 S. E., 710; *Caulfield v. R. Co.,* 170 La., 155, 127 So., 585; *Chesapeake Ferry Co. v. Hudgins* (Va.), 156 S. E., 429.

Furthermore, it does not appear that the defendant in its investigation went beyond the legitimate scope of the enquiry or committed any act therein from which a malicious intent could be inferred. See *Chesapeake Ferry Co. v. Hudgins, supra; Fitchette v. Sumter Hardwood Co.,* 145 S. C., 53, 142 S. E., 828.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter concur.