13578

BOSDELL v. DIXIE STORES CO.

(167 S .E., 834)

*Messrs. Allen & Doyle* and *Hicks & Johnson,* for appellant,

*Messrs. F. A. Wise, J. W. Thurmond* and *J. S. Thurmond,* for respondent,

February 11, 1933.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages based on an alleged libelous letter written by one M. S. Merritt, vice-president and secretary of the defendant company, to one C. G. Campbell, manager of defendant's store at McCormick, S. C.

It appears that one of Merritt's duties, as an officer of the company, was to take inventories; that is, about every thirty days to make a check of all items of merchandise in each store under his supervision and compare them with the items listed in the ledger, a book in which was entered a record of all merchandise brought into the store for sale as well as a credit of the amount of every item sold. By such comparison, he was able to detect, in the making up of his inventories, any shortages that might exist. He testified that some thirty days before he wrote the letter in question, he found that there was a shortage in the store at McCormick, which was under his supervision, and so advised the manager; that about two weeks later he took another inventory, and found a shortage of from $50.00 to $75.00; that it was then he wrote the letter about which plaintiff complains; and that while he thought Bosdell, who was then, and had been for

some time prior thereto, a clerk in the store, was responsible for the shortage, he was not accusing him, by what he wrote, of anything except carelessness in the weighing of goods. The letter written by Merritt to Campbell, as set out in the complaint, was as follows:

"Dear Mr. Campbell: The inventory is still unsatisfactory. I advise you to let Mr. Bosdell go. Get that other man as cheaply as you can. This shortage has got to stop. (Signed) M. S. Merritt."

The complaint alleged, *inter alia*, "that by the contents of the publication aforesaid, the defendant meant to, and did, charge the plaintiff with wilfully and knowingly taking either the goods, or the money, or both, from said store, which charges charged this plaintiff with the commission of the crime of larceny, indictable under the laws of this State, and involving moral turpitude on the part of the plaintiff."

The defendant interposed a general denial, and also specifically denied that it intended, by what was said in the letter, to charge the plaintiff with "wilfully and knowingly taking either the goods or the money or both from the store." It also pleaded the following defense: "That the letter set forth in the complaint was written in good faith; was confidential and privileged, having been written by proper officials of this defendant to the manager of the store, for the purpose of protecting the interest of this defendant, and that the statements made in the letter and the correct inferences to be drawn therefrom, are and were true, and were necessary to properly conduct the mercantile business which defendant was engaged in."

On trial of the case the jury found for the plaintiff $700.00. Motions for a nonsuit, a directed verdict, judgment notwithstanding the verdict, and, failing that, a new trial, duly made by the defendant, were all refused.

As stated by appellant's counsel in oral argument, the main questions presented by the appeal are those which arise

out of the refusal of the trial Judge to grant defendant's motion for a nonsuit. It is contended that the Court committed error in overruling the motion "for the reason that the plaintiff's own testimony was susceptible of no other reasonable conclusion than that the communication was a qualifiedly privileged one."

The plaintiff testified that he worked on Saturdays for the defendant, at its McCormick store, in 1928, and that he was then hired by its manager as a regular clerk, and continued to work there in that capacity until April 4, 1930, at which time he was discharged; that others worked in the store on Saturdays and during holidays and on busy days, all such help having free access to the cash register; that everything brought into the store was billed to sell at a certain price and the clerks were not allowed to cut the price fixed; that G. E. Campbell was the manager of the store and handled the cash, and made up and sent in a report every day showing a statement of the money received for merchandise sold the day before; that M. S. Merritt, one of the head officers of the company, came into the store every Tuesday, his duties being to see how everything was getting along and if anything was needed; that he would also come in once a month to take stock, and that perhaps he had something to do with managing the store; that at no time was anything said to witness about a shortage, or about his being careless in selling merchandise; and that he had never been accused of any crime before.

In the recent case of *Turner v. Montgomery Ward & Co.*, 165 S. C., 253, 163 S. E., 796, 799, the Court said:

"In *Fitchette v. Sumter Hardwood Company*, 145 S. C., 53, 142 S. E., 828, 834, this Court discussed somewhat at length the question of qualified privilege. It will not be necessary to repeat here all that was said in that case. We refer, however, to what was there quoted from the dissenting opinion of Mr. Justice Cothran in *Switzer v. Express Company*, 119 S. C., 237, 112 S. E., 110, 26 A. L. R., 819, as stating,

in succinct form, the issues which so frequently are to be determined when the defense of qualified privilege is presented: 'Was the "communication," alleged to have been slanderous, one of qualified privilege; this question depending upon the further question whether or not, the "occasion" being shown to have been one of qualified privilege, the occasion was so abused, or its bounds so exceeded by ill motive, as to deprive the communication of the qualifiedly privileged character which is presumed by the fact of its utterance upon a qualifiedly privileged occasion?'

"The Court then went on to say: 'It is not enough to show that the occasion was one of privilege, but it must also appear that the communication itself was made in good faith and was privileged as made.'

"Quoting from Newell on Slander and Libel (4th Ed.), 418: 'But it must be remembered that, although the occasion may be privileged, it is not every communication made on such occasion that is privileged. It is not enough to have an interest or duty in making a communication; the interest or duty must be shown to exist in making the communication complained of. A communication which goes beyond the occasion exceeds the privilege.'

"And from 36 C. J. at page 1248: 'The protection of the privilege may be lost by the manner of its exercise, although the belief in the truth of the charge exists. The privilege does not protect any unnecessary defamation. In order for a communication to be privileged, the party making it must be careful to go no farther than his interests or his duties require.'

"With respect to the question of malice the Court said: 'Ordinarily the publication of defamatory words actionable in themselves carries a *prima facie* implication of malice, and the plaintiff is not required to produce proof of malice beyond proof of the publication itself, but where the occasion is privileged there is a *"prima facie* presumption to rebut

the inference of malice" and the burden is on the plaintiff to show malice in fact.'

"And held, on the record in the case before it: 'As to the actual malice there was sufficient testimony to go to the jury, who, in deciding that question, might have recourse both to the language of the communication itself and to the extrinsic evidence. It was for the jury to say, too, whether the language used went further than the occasion required, if the occasion was privileged.' "

In the case at bar, it is clear that the language used in the letter was susceptible of two meanings; one innocent, and the other defamatory. It might reasonably be construed as merely imputing to the plaintiff, in the performance of his duties as a clerk, acts of carelessness resulting in the shortage complained of; but, on the other hand, it might reasonably bear the construction that plaintiff was guilty of theft of defendant's goods, a crime involving moral turpitude. It was for the jury to say, in all the circumstances, in which sense it was used. While the occasion was undoubtedly privileged, it could not be said as a matter of law that the language used, by way of comment, "This shortage has got to stop," if found to be defamatory, did not go beyond what was necessary to protect defendant's interests, thus destroying the privilege, and this question also was for the jury. And there was sufficient evidence on which to predicate a finding of malice in fact. It is evident, therefore, that the entire question was correctly submitted to the jury, who might take into consideration all the facts and circumstances of the case, the situation of the parties, etc., in determining whether the defense of qualified privilege was sustained.

The appellant also urges that there was "no evidence of any publication of the letter," and that the trial Court committed error in refusing the motion for a nonsuit on that ground. Plaintiff stated that he got the letter out of the post

office and carried it to Campbell, the manager, and testified further as follows:

"Q. Where were you and where was he, when he opened the letter? A. We were in the store.

"Q. Can you state if he read the letter? A. Yes, sir, it seems like he read it more than one time, he was looking at the letter a long time.

"Q. State what he did with the letter? A. He laid it down, at the cash register, and left it lying open, and went out of the back door and left it there.

"Q. After reading the letter he left it open there? A. Right at the cash register.

"Q. Did you later on see the letter? A. Yes, sir, I saw it when I got through waiting on someone and when I went to put the money in the cash register I saw the letter open and it was typewritten and I saw my name is why I picked the letter up.

"Q. Did you read the letter? A. Yes, sir.

"Q. Did you make a copy of it? A. Yes, sir. I did."

While counsel for appellant cite authority which sustains the view that "communications between officers of a corporation * * * in the course of corporate business, are not publications to third persons by the corporation," they say: "We believe that a better statement of the rule would be that such communication would be a publication but that the publication would be qualifiedly privileged"—citing 36 C. J., 1266, Paragraph 251, as follows: "Communications made by a principal to an agent, or by an agent to a principal, relative to the subject matter of the agency or employment, and containing information or giving direction relative thereto, fall within the call of privileged communications, although they contain defamatory matter concerning a third person. If a communication by an agent or attorney to a third person is reasonably necessary and usual in the discharge of his duties to his principal or client, it is *prima facie* privileged."

They contend, however, that the same result would follow in this case if the second statement of the rule be adopted instead of the first, for the reason that there was "no defamatory publication, such as would sustain an action," and "no evidence of a publication by defendant of any communication which went beyond the privilege." We are not sure whether counsel intended to make a distinction between a "qualifiedly privileged communication" and a "qualifiedly privileged publication," nor just what is the distinction so intended, if any. However, the privilege referred to in the authority cited being a qualified one, it is necessarily governed by the general rules applicable to other qualifiedly privileged communications. Publication being conceded, what we have already said with reference to such communications applies. The defendant contends that, in order to protect its interests, it was necessary to send the communication in question to its manager and agent, Campbell, directing or suggesting that he discharge the plaintiff, and that was its only purpose. If, however, it could have done all that its interests demanded, in directing the discharge, without the use of the objectionable words contained in the communication, their use presented an issue as to whether the privilege of the occasion had been exceeded. The language was susceptible of the inference that the defendant assigned a criminal reason for the suggested discharge of Bosdell; in this form the communication was sent to its agent, Campbell, to be read by him, and was so read. The exception raising this question cannot be sustained.

The plaintiff also offered the testimony of the witness Mason to prove publication. This witness testified that some time after Bosdell quit or was discharged by the defendant, he had a conversation with Campbell in the store at McCormick, to the following effect: "I asked Mr. Campbell where Mr. Bosdell was and he said he was not with them now, that he quit, and I asked him why and he said he did not know what the trouble was, that he

had a letter from the Dixie Stores stating that there was a shortage and advising him to get rid of Mr. Bosdell."

We are of opinion that this was not a publication by the defendant of the alleged libelous communication. The conversation took place some time after the incident of the discharge had been closed; and it is not made to appear that Campbell at the time was engaged in the performance of any duty committed to him by the company in connection with Bosdell's employment or discharge, or that he had any authority to make any statement with reference to the matter on behalf of the defendant. In other words, in making the statements imputed to him, Campbell was not acting, as an agent of the company, within the scope of his authority. See *Courtney v. American Express Company*, 120 S. C., 511, 113 S. E., 332, 24 A. L. R., 128.

The grounds of defendant's motion for a directed verdict were the same as those of the motion for a nonsuit. A discussion of them, therefore, is made unnecessary by the conclusions we have already reached.

The appellant also charges the trial Judge with error in admitting, over objection, the testimony of the witness Mason, offered by plaintiff in reply; the grounds being that the questions asked were leading and that the testimony was not in reply in any particular. While we think, from an examination of this testimony, that the defendant is correct in contending that it was largely a repetition of that given by the same witness on his examination in chief, and that the questions propounded were leading, there was no manifest error of law, in the circumstances. Such matters are necessarily left largely to the discretion of the trial Judge, and unless it is shown, as it is not in this case, that he abused his discretion, this Court will not interfere.

In response to argument of counsel for defendant, that their motion for a directed verdict should be granted, the trial Judge made the following observa-

tion: "I will let the jury pass on it. If a person composes a libel and sends it to his agent, to be read by him, and it reaches its destination and is read by such agent, it is sufficient publication to support an action."

Appellant contends that this statement, made in the presence of the jury, was highly prejudicial for two reasons: (1) Because the proposition of law stated was unwarranted in view of the plea of privilege; and (2) because it was an expression of the Court's opinion that the defendant had "composed a libel," and was a comment on the facts.

We do not think that this Court, in the circumstances shown, would be warranted in granting a new trial for the first reason stated. Later, in charging the jury, the trial Judge instructed them fully as to "qualifiedly privileged communications." In regard to the second reason advanced, the question presented is, Did the Court, by such a statement in the presence of the jury, participate with them in their decision of the case? *Simon v. Ætna Casualty & Surety Company,* 151 S. C., 44, 148 S. E., 648, is cited by appellant in support of the affirmative of this question. We think, however, that the remarks of the trial Judge in the *Simon case,* on account of which this Court thought a new trial should be granted, were far more serious than the remarks in the case at bar. We cannot say, in the case before us, that the proposal by the Court to the attorneys of a hypothetical proposition, "if a person composes a libel," was such a comment on the facts as would be reasonably construed by the jury as expressing the trial Judge's view on the merits of the case, requiring a reversal of the judgment below. The exception raising this question, therefore, must be overruled.

By its seventh exception the appellant imputes error to the trial Court in using in his charge an illustration of "absolute privilege," upon the ground that such illustration was calculated to confuse the jury and had no application whatever to the question of qualified privi-

lege on which the defendant relied as a defense. By the illustration used, the Court drew a distinction between the two kinds of privilege, absolute and qualified, in an attempt to make plain to the jury the difference between them; and what he said could not possibly have created any confusion. In addition, if counsel conceived that the Court was misstating the issue, he should have directed attention to the mistake.

The trial Judge instructed the jury that the action was brought by the plaintiff to recover damages from the defendant "because of the publication by the defendant of an alleged libel of and concerning the plaintiff." It is contended that the expression, "because of the publication," was a charge on the facts; the jury thereby being instructed that there was a publication of the alleged defamatory letter. While this was doubtless a technical error, we do not think that the jury was misled by it, or that it affected the result in any way. By reference to other portions of the charge, it is seen that the jury were instructed that the matter of publication was a question of fact for them; a charge favorable to the defendant.

The appellant also excepts to the Court's refusal to charge its oral request, made at the conclusion of the main charge: "We simply want your Honor to charge the jury that this communication was a qualifiedly privileged communication, and that the sole question for them is the question of malice, and that the burden is upon the plaintiff to show that there was malice; that is our interpretation of this case."

This exception is without merit. The request was much less favorable to the defendant than the instructions already given, and the refusal to charge it could not possibly have been prejudicial.

Several times in his charge the trial Judge referred to the law applicable to communications libelous *per se*. The appellant earnestly insists that, as the com-

munication in question was not of such a nature, the instructions were not applicable, and were calculated to confuse and mislead the jury.

We have read the entire charge several times, and have given special attention to the excerpts quoted therefrom by appellant. It appears to have been the purpose of the trial Court, in charging as he did, to make clear to the jury the difference between communications which are libelous *per se* and those which are not; that, in the first instance, malice would be presumed, while in the latter it would have to be shown by the plaintiff by the preponderance of the evidence. While the instructions objected to may have been fuller than was required by the issue made, still we do not think that they misled or confused the jury, as the appellant seems to think. The same objection to the Court's charge with regard to qualified privilege is made, and we answer the objection in the same way. Excerpts taken here and there from the instructions given show, when standing alone, some technical errors, but we do not think, when the charge is considered as a whole, that these errors were harmful to the appellant.

By its eleventh exception appellant imputes error to ██ ██ the trial Court in charging plaintiff's request: "That it is not necessary, on the part of the plaintiff to prove a libel by either direct or positive statements, therefore if the jury find from the preponderance of the testimony produced by plaintiff, that the alleged words were uttered and published by the defendant, and that taking all of said words together as used in their general and popular sense, and as generally understood by people reading or hearing said words, said words either by insinuation or imputation constitute libel as I have heretofore charged you, then a charge of libel would be made out"—without adding thereto the qualification that if the libel described in that charge was made upon a qualifiedly privileged occasion, and

that such privilege was not exceeded, then the plaintiff could not recover."

There was no error as complained of. What counsel for defendant contend should have been added to the request, was stated, either actually or in effect, elsewhere in the Court's charge. All of the law applicable to the issues made could not be stated in one sentence or in one request. The entire charge, as we have stated, must be referred to and considered in determining whether what was told the jury in any particular portion was prejudicial to the complainant. We think the verdict of the jury should be allowed to stand.

All exceptions are overruled, and the judgment of the Circuit Court affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.