14900

TUCKER v. PURE OIL CO. OF THE CAROLINAS *ET AL.*

(3 S. E. (2d), 547)

December, 1938.

*Messrs. W. F. Wimberley, George D. Levy* and *Thomas, Lumpkin & Cain,* for appellants,

*Messrs. Tompkins & Tompkins,* for respondents,

June 14, 1939.

The opinion of the Court was delivered by MR. G. DUNCAN BELLINGER, ACTING ASSOCIATE JUSTICE.

The respondent's complaint contains two separate causes of action demanding in each of them $50,000.00 damages on account of certain alleged slanderous statements made of and concerning the respondent by the appellant C. C. Ingram, while in the employ of his co-appellant Pure Oil Company of the Carolinas. From the rendition of verdict against each appellant on each cause of action, the appellants bring this appeal.

At proper times the appellants moved for a nonsuit and directed verdict on both causes of action, which motions were overruled. Appellants thereafter moved for a new trial, which motion was also overruled.

The appellants make twelve exceptions but in the presentation thereof, in its argument by grouping some of the exceptions, the appellants present five questions to be determined by the Court. Some of the questions raised involve both causes of action, while certain ones involve only a single cause of action.

The appellants specifically abandoned Exception I, and it was, therefore, not considered.

The questions presented by the appellants, as raised by the exceptions, are as follows: "1. Did the Court abuse its discretion in allowing witness whose presence was not indicated by complaint, to testify that she heard the publication? 2. Did the Court err in refusing to hold, as a matter of law, that the words were not defamatory and could not have been

so understood under the circumstances? 3. Did the Court err in refusing to grant nonsuit or direct the verdict in favor of defendants on grounds stated in the record? 4. Was the Court's charge misleading and erroneous in the instances cited in the record? 5. Did the Court err in refusing to set aside the verdict and grant a new trial on the grounds stated in the record? 6. Did the Court err in refusing to grant nonsuit and directed verdict on the second cause of action as to the corporate defendant on grounds stated in the record?"

In considering the questions raised on the appeal, we shall take up the causes of action separately and dispose of them in the order set out in the complaint.

### As to the First Cause of Action

The respondent alleges in his complaint in substance, omitting the formal parts thereof, that he had formerly been employed by Pure Oil Company of the Carolinas but that he had, previous to the time of the occurrence complained of, severed his connection with that appellant.

The first cause of action set out in the complaint is contained in Paragraph 3, and is as follows: "3. That thereafter, on or about the 21st day of March, 1936, one Mrs. Carrie C. Williams, went to the filling station in the City of Sumter, which was formerly operated by the plaintiff, and asked the defendant, C. C. Ingram, who was in charge thereof and operating same as agent of the defendant corporation, why the said M. B. Tucker was not in charge of the station any longer, remarking that the said plaintiff was very accommodating and that in reply thereto the said C. C. Ingram, individually and as agent of the defendant corporation, stated to Mrs. Williams, 'that was his trouble; he was too accommodating and got checked out because he was short in his accounts,' and that he, the said C. C. Ingram, individually and as agent of the defendant corporation, then and there stated to Mrs. Williams that he had no cans in which to sell her gasoline, remarking, 'I

haven't got anything to serve it to you in, because Tucker took all the cans that belonged to the company'."

By their answer the appellants admit that the appellant, Ingram, was the zone manager in charge of his co-appellant's business in Sumter County, but deny the remaining material allegations of the complaint.

Appellants' Exception two, which presents the first question to be passed upon, charges that the trial Judge abused his discretion in allowing a witness, Miss Margaret Williams, the daughter of Mrs. Carrie C. Williams, whose presence at the time of the publication of the alleged slanderous statement was not indicated by the complaint, to testify that she was present and heard the publication by Ingram of the alleged slanderous statement. The complaint alleged that the slanderous words were spoken of and concerning respondent to Mrs. Carrie C. Williams, but did not set forth or in any wise indicate that anyone, other than Mrs. Williams, was present when the appellant, Ingram, is said to have uttered the slanderous statement to Mrs. Carrie C. Williams. The trial Judge permitted Miss Margaret Williams, over the objection of the appellants, to testify that she was with her mother at the station of the appellant, Pure Oil Company, and that she heard the conversation between the appellant, Ingram, and her mother. The testimony of this witness corroborated that given by Mrs. Carrie C. Williams. The appellants objected to this witness being allowed to testify on the grounds that the complaint alleged that the conversation complained of was made to Mrs. Williams, and that, by the complaint, they were not put upon notice that the witness was present at the time. The appellants rely upon the case of *Bolin v. Cotton Oil Mill,* 163 S. C., 13, 161 S. E., 195, to support this exception. The question here raised was not passed upon in the case referred to. In the *Bolin case,* the defendant had sought to have the complaint made more definite and certain by setting forth the names of the persons present at the time of the alleged slander in that case.

This Court held that where a motion to make more definite and certain is made in cases of this nature, the plaintiff should set forth the names of the parties in whose presence it is alleged that the slanderous statements were made by way of publication, the reason being to enable the defendant to answer the charge made and prepare his defense.

An essential element of slander is that the slanderous words should have been spoken in the presence of some person other than the plaintiff, for without this the plaintiff could suffer no injury to his reputation and standing in the community. Publication in actions of this nature is always a material and issuable fact. By requiring the plaintiff to set forth in his complaint the name or names of the persons to whom the defamatory words concerning the plaintiff were spoken is not done for the purpose of requiring the plaintiff to disclose to his adversary the names of the witnesses that he relies on to prove to whom the defamatory words were spoken, but is to limit the issues to the particular person or persons named in the complaint. In the present case, the appellants were apprised by the complaint that the respondent intended to prove on the trial of the case that the publication of the alleged slander was made to Mrs. Carrie C. Williams. The appellants being put on notice of this by the complaint, were enabled to answer the charge made and prepare a defense thereto. In the proof of his case, the respondent was not restricted to the proof that the alleged slander was published to Mrs. Carrie C. Williams, by the testimony of that party alone, but he could call to testify any other person who was present at the time of the publication of the alleged slander to show that the same was published to Mrs. Carrie C. Williams. This is all that the respondent did when it introduced the testimony of Miss Margaret Williams to prove this material and issuable fact. It, therefore, follows that the trial Judge committed no error in permitting the witness, Miss Margaret Williams, to testify.

Having discussed the questions of law peculiar to the first

cause of action, we will now discuss the questions applicable to both the first and second causes of action.

Appellants' Question 3 alleges error of the trial Judge in his refusal to grant appellants' motion for nonsuit or directed verdict.

Appellants contend that the trial Court should have held as a matter of law that the words complained of as being slanderous were not defamatory and could not have been so understood under the circumstances. The gravamen of the charge made in the complaint is that in the conversation with Mrs. Carrie C. Williams, appellant, Ingram, individually and as agent of his co-appellant, while acting within the scope of his authority as such agent, charged that the respondent was "short in his accounts." The evidence of the respondent showed that the term "shortage" in reference to the respondent, was used by appellant, Ingram. It is true that a person may be short as a result of incompetency and not as a result of a criminal act, but where words may be susceptible of two meanings, one slanderous and the other innocent, it is for the jury to determine from all of the circumstances attending the publication in what sense the defendant used them. It, therefore, became a question for the jury to determine whether the words used were defamatory and the trial Judge would have erred had he held that as a matter of law the words were not defamatory. *Nunnamaker v. Smith's,* 96 S. C., 294, 299, 80 S. E., 465; *Williamson v. Askin & Marine Co.,* 138 S. C., 47, 136 S. E., 21; *McClain v. Reliance Life Insurance Co.,* 150 S. C., 459, 148 S. E., 478; *Campbell v. Life & Casualty Insurance Co.,* 155 S. C., 63, 152 S. E., 18; *Turner v. Montgomery Ward & Co. et al.,* 165 S. C., 253, 265, 163 S. E., 796; *Bosdell v. Dixie Stores Co.,* 168 S. C., 520, 167 S. E., 834. This exception is without merit.

The appellants claim that the Court erred in refusing to grant a nonsuit or directed verdict in favor of appellants, upon the grounds that the words alleged to have been spoken

were not defamatory and could not be taken by one hearing them uttered at the time and place of their alleged utterance. The circumstances and events upon which respondent's cause of action depends are found in the testimony of Mrs. Carrie C. Williams, a witness for the respondent. This witness testified that she had gone to the Pure Oil bulk station in Sumter for the purpose of purchasing gasoline; that she found the appellant, Ingram, in charge of his co-appellant's filling station, instead of the respondent who had formerly been in charge thereof. While being served as a customer, she inquired of the appellant, Ingram, as to the whereabouts of the respondent. That in response to her inquiry, Ingram replied: "He said he was too accommodating and that was the reason he wasn't there—said he was too accommodating and that was the reason he was checked out—accommodations and favors.  *  *  *  That he was checked out on account of his shortage."

What has been said of the language of the first cause of action is equally applicable to the second cause of action, for the reason that both causes of action depend upon the meaning of the word "shortage."

Under the holdings of this Court, the trial Judge properly submitted the issues to the jury to determine under the evidence whether or not the words uttered were defamatory.

Appellants' Exception 10 contends that the trial Court's charge was erroneous and misleading in certain particulars. Taking the charge in its entirety we fail to find therein the errors complained of. It was a fair and comprehensive statement of the principles of law applicable to the case. See *Turner v. Montgomery Ward & Co. et al.,* 165 S. C., 253, 163 S. E., 796.

We think that counsel for appellant has misconstrued the effect of the testimony of Messrs. George D. Levy and Shepard K. Nash and would give to those gentlemen the task of proving or denying the truth of the alleged slanderous remarks when such was not the case.

These gentlemen testified as to what two of the witnesses had stated to them and we, like the trial Judge, entertain the highest regard for the integrity of these gentlemen, but, it was not their veracity which was being weighed, it was that of the witnesses. The witnesses undoubtedly made the statements ascribed to them by Messrs. Levy and Nash, but they also testified to the contrary in the trial and the trial Judge very properly left it to the jury to say when these witnesses spoke truly.

## As to the Second Cause of Action

The appellant, Pure Oil Company, by its Exceptions 5 and 8, assigns error in the refusal of the trial Judge to grant its motions for a nonsuit and for a directed verdict as to the second course of action set forth in the complaint. These exceptions test the sufficiency of the evidence under the scintilla rule, to sustain plaintiff's second cause of action as to it. The question raised by these exceptions is: Was there any competent, relevant testimony to show that at the time and place of the publication of the slanderous statement contained in the second cause of action, the appellant, Ingram, was acting as an agent of the company within the actual scope of his agency in publishing the alleged slanderous utterance?

In reviewing exceptions to the trial Judge's denial of a defendant's motion for nonsuit and directed verdict, this Court must construe all of the testimony and inferences to be drawn therefrom most favorably to the respondent. See *Smith v. Benefit Ass'n of Railway Employees,* 178 S. C., 449, 183 S. E., 318; *Robison v. Atlantic Coast Line R. Co.,* 179 S. C., 493, 184 S. E., 96; *Holder v. Sovereign Camp, W. O. W.,* 180 S. C., 242, 185 S. E., 547; *Hice v. Dobson Lumber Co.,* 180 S. C., 259, 185 S. E., 742; *Worrell v. South Carolina Power Company,* 186 S. C., 306, 195 S. E., 638; *Horne v. Southern Ry. Co.,* 186 S. C., 525, 197 S. E., 31, 116 A. L. R., 745; *Murray v. Martin,* 188 S. C., 334, 199 S. E., 301.

This Court has not jurisdiction to review matters of fact in an action at law, except to determine if a verdict is wholly unsupported by competent evidence. *Worrell v. South Carolina Power Company, supra.*

The record before us shows that the appellant, Ingram, admitted that prior to 1936 and until March 20, 1936, he was zone supervisor for his co-defendant, Pure Oil Company of the Carolinas. This defendant further testified:

"Q. And Mr. Tucker was working under you as zone agent when all these things arose out of what he was discharged for? A. Yes, sir."

He further testified:

"Q. When you went down to Mr. Cousar's place, they were selling gasoline—your company—they were furnishing that station? A. Yes, sir.

"Q. How often would you go down there? A. Probably once a month, or once every two weeks, or sometimes once every two months.

"Q. You were anxious to keep that business? A. Sure.

"Q. He was on your list of agents that were using your gas when you took it over from Mr. Tucker? A. Yes, sir."

From the foregoing admissions on the part of the appellant, Ingram, it certainly appears that as zone agent this appellant attended to the company's business at Cousar's filling station.

The respondent's testimony is that his filling station was taken over by an auditor of the company on or about March 2, 1936, and was in possession of the auditor and the appellant, Ingram, during the time that the respondent was being audited, and that on March 19, 1936, he was "checked out" and his contract was given to the appellant, Ingram. The respondent further testified that the audit was not satisfactory to him as there were certain credits claimed by him which were not allowed by the audit.

That the alleged slander was published on some date prior to March 19th, and subsequent to March 2nd, is shown by the testimony of Ingram who in speaking of Cousar testified:

"Q. How many times did you see him before he signed the affidavit? A. I don't recall seeing him at all since the time I took the agency over."

The alleged slander was published "right at the filling station."

The witness, Cousar, testified as to his conversation with the appellant, Ingram, in part, as follows:

"Q. Was he or were you all trying to handle any kind of business or transact any kind of business? A. No, sir; I believe there was a new man with him.

"Q. Another man with him? A. They were trying to see what equipment was in the store."

This same witness, who had formerly purchased petroleum products of the defendant company through the respondent, its then commission agent, in speaking of his own account with the appellant company, said: "Listen: I owed Mr. Tucker—whether his credit or he got it from the Pure Oil Company—I owed him or the Pure Oil Company, one, Eleven Hundred Dollars. I paid them every nickel. And we were discussing about the shortage, I said, 'Ain't nothing coming against me?' He said 'No'. In other words, just a friendly discussion. He was talking about Tucker."

Viewing the testimony in the light most favorable to the respondent, we cannot say that it is susceptible of only one reasonable inference; we therefore are of opinion that the trial Judge properly submitted the issue of agency to the determination of the jury.

The appellant, Pure Oil Company of the Carolinas, relies strongly upon *Courtney v. American Ry. Express Company,* 120 S. C., 511, 113 S. E., 332, 24 A. L. R., 128; and *Bosdell v. Dixie Stores Co.,* 168 S. C., 520, 167 S. E., 834. Those two cases are however very easily distinguished by the fact that in each of the above-cited cases the employee had

already been discharged and the incident marked "closed" as the Court was careful to point out, while in the instant case Tucker had not been discharged at the time of the publication of the alleged slander and the agent, Ingram, was at the time "checking him out."

Applying, as nearly as we can, the language of Chief Justice Stabler, in *Bosdell v. Dixie Stores Co., supra,* to the facts of this case, we are of opinion that this was a publication by the appellant company of the alleged slanderous communication. The conversation took place before the incident of discharge had been closed; and there is evidence tending to prove that at the time Ingram was engaged in the performance of a duty committed to him by the company in connection with Tucker's employment or discharge; and that he had authority to make a statement with reference to the matter on behalf of the company. In other words, in making the statements imputed to him, Ingram was acting, as an agent of the company, within the scope of his authority.

The trial Judge properly overruled the motions made for nonsuit, directed verdict and a new trial.

The exceptions are overruled and the judgment of the lower Court is affirmed.

Mr. Chief Justice Stabler and Mr. Justice Bonham concur.

Messrs. Justices Baker and Fishburne concur in result.

Mr. Justice Carter did not participate on account of illness.

Mr. Justice Baker (concurring in result) : It appears to me that the testimony on which the plaintiff (respondent here) was entitled to have his case submitted to the jury is very slight, almost to the point of being shadowy, rather than substantial. But I concur in the result of the opinion of Mr. Acting Associate Justice Bellinger on the following grounds:

(1) The witness who testified to the incident involved in the second cause of action stated that Ingram, the representative of Pure Oil Company, was at the time in question checking on the equipment of a filling station which sold Pure Oil products. This tends to support respondent's claim that at such time Ingram was acting as zone manager of Pure Oil Company, as alleged in the complaint and admitted by the answer. There is much testimony in the case, offered on the part of both the plaintiff and of the defendant, from which an inference to the contrary may be drawn, but under the rules repeatedly declared by this Court respecting a conflict in the testimony, even in the testimony of a particular witness, there was probably enough in the statement above indicated, to carry the case to the jury on the question whether Ingram, at the time in question, could utter a slander that would involve liability on the corporate defendant. But it is not my thought that in the majority opinion this Court indicates a departure from the sound doctrine that a master is not liable for a tort committed by his servant, where at the time the servant was not engaged in the performance of work within the scope of his employment and where the tort is not within such scope of his employment. See for example, *Murray v. So. B. T. & T. Co.*, 103 S. C., 427, 88 S. E., 31; *Courtney v. Amer. Ry. Express Co.*, 120 S. C., 511, 516, 113 S. E., 332, 24 A. L. R., 128; *Hypes v. Sou. Ry. Co.*, 82 S. C., 315, 64 S. E., 395, 21 L. R. A. (N. S.), 873, 17 Ann. Cas., 620; Annotation, 40 A. L. R., 1212.

(2) The statement above referred to, though made in the course of the testimony relating to the second cause of action, was not the subject of any request on the part of appellant's counsel to limit it to the second cause of action. It therefore was equally applicable to the first cause of action, in view of the fact that the incidents in the two causes of action may have been found by the jury to have occurred at about the same time.

(3) The statements charged to be slanderous, even if not

slanderous *per se,* had a direct relation to the business of the plaintiff. That business was the handling of the products of a manufacturer and of the proceeds of sale of the same, and the keeping of accounts relating to the business. On that alone, it was competent for the jury to find from all of the evidence, that the words charged to have been used were uttered and understood in the sense of imputing to the plaintiff dishonesty in the nature of larceny or embezzlement.

I have grave doubt whether the testimony relative to the incident stated in the first cause of action, standing alone, entitled the plaintiff to the benefit of the rule stated. But the testimony taken in connection with the incident referred to in the second cause of action was not limited to that cause of action, and since the two incidents may be found to have occurred at about the same time, it may be regarded as furnishing some basis upon which the jury could determine that the words in question were uttered and understood in the sense charged.

Messrs. Justices Bonham and Fishburne concur.