16553

FULTON v. ATLANTIC COAST LINE R. CO.

(67 S. E. (2d) 425)

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondent,*

October 24, 1951.

FISHBURNE, Justice.

Respondent, a colored mail porter, brought this action against the appellant Railroad Company to recover damages for alleged slander and libel. This charge was based upon an investigation made by appellant concerning an alleged misrepresentation of fact by respondent relating to an accidental injury sustained by him while enroute from Florence,

South Carolina, to Rocky Mount, North Carolina, on January 16, 1948. As a result of this investigation, the respondent was discharged.

In addition to the general denial of the allegations of the complaint, appellant interposed several defenses. It is alleged that appellant's agent, in conducting the investigation, acted in good faith; was not activated by malice or illwill toward the respondent; that the statements were not libelous or slanderous; and that the same were privileged.

When the case came on for trial in the Civil Court of Florence County, a verdict was directed in favor of appellant. Thereafter, in due course, this order was set aside and a new trial granted. In effect, this appeal is from the refusal of the trial court to direct a verdict in favor of the Railroad Company. In concluding his order granting a new trial on motion of respondent, the trial judge stated: "There was practically no evidence introduced by the defendant to negative the inescapable inference raised by the plaintiff's testimony that the plaintiff had been dealth with unjustly, callously, and in gross disregard of his rights or the injury which would follow from his unreasonable discharge for dishonesty."

The respondent, Fulton, commenced his employment with the Railroad Company in 1943, as a mail porter. His route commenced at Florence, in South Carolina, and ended at Rocky Mount, in North Carolina. He continued as such employee until April 3, 1948, when he was dismissed from service for allegedly misrepresenting facts regarding a physical injury sustained by him on appellant's passenger train while in the discharge of his duties, on January 16, 1948.

On the day in question, respondent boarded the train at Florence about 8:30 o'clock in the morning, and began the sorting of mail in the mail car. At some point between Florence and Fayetteville, while the train was in motion, he stepped on a sack of mail and sprained his ankle. Brunson, a colored train porter, upon entering the mail car, observed

that respondent was limping and asked, "What was the matter he was limping. He (Fulton) told me that he hurt this ankle last Summer; that something struck it and it was hurting him again." Upon Brunson's suggestion he was given respondent's ticket book, with the statement that he would deliver it to the conductor.

The baggage master, Mr. White, also noticed that respondent was hopping around on his left foot, and told Fulton that he had better go to the hospital of the Atlantic Coast Line Railroad Company at South Rocky Mount, and that he would attend to Fulton's duty of putting the mail off at North Rocky Mount. He did perform this service for Fulton, but denied that Fulton made any statement to him about suffering the ankle injury while on the train. The respondent did not leave the train at South Rocky Mount, but went a mile farther, to North Rocky Mounty, where he was assisted in getting off the train. He secured a cab and was driven back to South Rocky Mount to the hospital. Upon examination; it was discovered that he had a fractured bone in his left ankle, and the leg was put in a cast.

Two days after the accidental injury, while respondent was in the colored ward of the hospital, Mr. Powell, the trainmaster, went there to interview him about the injury, and after questions and answers, reduced the statement to writing, which he had the respondent to sign. This statement was substantially what we have hereinabove set out. Two days later, Mr. Powell obtained signed statements in question and answer form, from Mr. White, the Baggage master, and Brunson, the train porter. In these statements it was denied that respondent told either White or Brunson that he had received his injury on the train, but they asserted that he told them that he got his ankle hurt the previous Summer.

It appears that on September 19, 1946, the respondent sprained his ankle and was attended by Dr. Lide of Florence, who was the local surgeon there for the Railroad Company.

Dr. Lide x-rayed the ankle, found no indication of a fracture, but only a sprain in the joint. The ankle was taped, and gave absolutely no trouble thereafter.

After obtaining the statements from White and Brunson, Powell, the trainmaster, on account of what he termed the wide divergence between the statements of the baggage master and the porter, and the statement of respondent, conceived it to be his duty to hold an investigation, in which respondent was charged with misrepresenting the facts regarding his injury alleged to have occurred on the train.

This hearing was held in the Railroad Station of appellant at Florence. Mr. Powell conducted the examination and reduced it to writing.

The first examination held by Mr. Powell was when he questioned respondent two days after his injury, while in the hospital, That examination sheet is thus headed:

"Accidents: Alleged personal injury to mail porter C. F. Fulton, Train 376 between Florence, S. C. and Dillon, S. C., January 16, 1948."

The sheet containing the statements taken the day following Fulton's examination, and signed by White, Brunson, and Mr. Tinsley, the conductor, was captioned in the same way. The report of the investigation and the testimony of the witnesses taken in the Railroad Station at Florence on March 18, 1948, is thus captioned:

"Investigation: Misrepresentation of facts regarding injury alleged to have occurred to mail porter C. F. Fulton, colored, on Train 376, between Florence and Dillon, January 16, 1948."

In every statement, respondent asserted that he told Brunson, the porter, that the injury occurred on the train. On trial, appellant did not offer Brunson as a witness. Appellant in its brief now makes no contention as to any issue concerning the truth of the fact that the respondent on January 16, 1948, sustained an accidental injury on its train, result-

ing in a fractured bone in his left ankle. This is admitted without qualification.

Insofar as the facts are concerned, appellant's only contention is, that respondent did not tell White or Brunson, as falsely claimed by him, that he had suffered the injury on that day, but told them that the injury had occurred the previous Summer.

Throughout the statements taken by Mr. Powell, the trainmaster,—the one from Fulton at the hospital, and again at the hearing three months later, at Florence,—the inference may be drawn that he anticipated a suit for damages by respondent against the Railroad Company for personal injury. Time and again, the question appears on his examination of respondent: "There was nothing in the operation of the train, sudden stop, lurch on curve, or anything of that type that caused you to be injured, was there?" The answer given by respondent was invariably in the negative. He said that the floor of the mail car was cluttered with mail sacks; that in sorting the mail, he stepped on a mail bag, and that his ankle turned and was sprained. Respondent did not know that he had suffered a fractured bone in his left ankle until he reached the railroad company's hospital at South Rocky Mount, and had the x-ray made.

Ostensibly, the object of the investigation was to get at the true facts, but the inference may be drawn from the record that its real purpose was to lay the groundwork for destroying the plaintiff's statement that he was injured on appellant's train, and to fortify the defense against an anticipated action for damages. Mr. Powell admitted on the witness stand that these statements and investigations are used as evidence against employees of the defendant company when they endeavor to sue for personal injury.

On April 3, 1948, respondent received the following letter from R. C. Murchison, Superintendent, who had been furnished with a copy of the testimony taken at the hearing in Florence:

"Rocky Mount, N. C., April 3, 1948
"40-2386

"C. F. Fulton
"Mail Porter
"Richmond, Va.

"This is to advise that you have been dismissed from the service for misrepresenting facts regarding your personal injury while on train No. 376, between Florence and Dillon, S. C., January 16th, 1948.

"Please report to Trainmaster Flippen's office and arrange to turn in all company property and transportation held by you.

"R. C. Murchison, Superintendent."

Copies of this letter were mailed to H. S. Flippen, Trainmaster at Richmond; E. H. Powell, Trainmaster at Florence, and J. C. Mixon, an officer or employee of the Railroad Company.

As a mail porter for appellant, respondent received as salary approximately $110.00 every two weeks. Following his discharge, and while still somewhat crippled he sought and obtained employment in Florence, with a dry cleaning establishment, where he solicited clothing for cleaning. He received by way of compensation $6.00 or $7.00 per week, and continued this employment for about a month. He then went to Richmond and talked with a Mr. Purvis, an official of the Railroad Company, who had general supervision of mail porters, to see if he could again obtain employment with appellant. Mr. Purvis told him that he would have to see Trainmaster Powell, who had conducted the investigation at Florence, and who had found that Fulton had made false statements concerning the injury. Failing to get work or reinstatement with appellant, respondent finally procured employment with a dry cleaning establishment in Richmond, at $20.00 per week.

Appellant contends that the hearing held at Florence on March 18, 1948, at which were present White, the baggage

master, Brunson, the porter, and Tinsley, the conductor; also Powell, the trainmaster and recorder, and respondent, —was a privileged occasion, if not absolute, at least qualified. And that any communication made in connection therewith was likewise at least qualifiedly privileged; that the evidence shows that there was no abuse of privilege, and there was no evidence of malice. It was likewise argued that there is no evidence whatever of actual slander or libel.

The publication of defamatory words may be under an absolute, or under a qualified or conditional privilege. Under the former there is no liability, even though the defamatory words are falsely and maliciously published. The class of absolutely privileged communications is narrow, and practically limited to legislative and judicial proceedings and acts of state. One publishing defamatory words under a qualified or conditional privilege is only liable upon proof of express malice. The only privilege which appellant could have invoked in this case was the conditional or qualified privilege.

That the appellant believed the charges to be true did not justify it in publishing them in an improper and unjustified manner or with improper and unjustified motives. Proof that they were published in such manner and with such motives would constitute sufficient proof of malice, or malice in fact. It is not necessary that evidence must be offered of malignity or illwill, nor that those facts should be found. The time, place, and other circumstances of the preparation and publication of defamatory charges, as well as the language of the publication itself, are admissible evidence to show that the false charge was made with malice.

It is generally held that the protection of a qualified privilege may be lost by the manner of its exercise,— *Rowell v. Johnson,* 170 S. C. 205, 170 S. E. 151,— although belief in the truth of the charge exists,—*Turner v. Montgomery, Ward & Co.,* 165 S. C. 253, 163 S. E. 796.

The privilege does not protect any unnecessary defamation. In order for a communication to be privileged, the person making it must be careful to go no further than his interests or his duties require.

Where the person exceeds his privilege and the communication complained of goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of plaintiff, he will not be protected. And the fact that a duty, a common interest, or a confidential relation existed to a limited degree, is not a defense, even though he acted in good faith. *Fitchette v. Sumter Hardwood Co.,* 145 S. C. 53, 142 S. E. 828; 53 C. J. S., Libel and Slander, § 97, Page 153.

It was a question for the jury, to determine not only whether such publications went too far beyond what the occasion required and was unnecessarily defamatory, but also, whether Powell, appellant's trainmaster, was actuated by malice, and whether respondent had been dealt with unjustly and in gross disregard of his rights.

For instance, it was held in *Bosdell v. Dixie Stores Co.,* 168 S. C. 520, 167 S. E. 834, that where the vice president of a company wrote a letter to the store manager where the plaintiff was employed that a certain shortage must stop, and advised the company store manager to discharge the plaintiff, that although the occasion was conditionally privileged,—whether the statement that the shortage must stop was unnecessary and went beyond the limits of conditional privilege, was a question of fact for the jury.

In *True v. Southern R. Co.,* 159 S. C. 454, 157 S. E. 618, cited by appellant, the court held that the evidence did not show that the defendant went beyond the legitimate scope of the investigation or committted any act from which malicious intent could be inferred. In our opinion, however, under the present record, it was for the jury to determine whether the publication complained of went beyond what the occasion demanded so as to constitute proof of malice.

As was well stated in 33 Am. Jur., Sec 113, Page 115: "* * * But a publication loses its character as privileged and is actionable if it is motivated by express or actual malice, *or if there is such gross disregard of the rights of the person injured as is equivalent to malice in fact * * *.*" (Emphasis added.)

In the case at bar, the plaintiff was advised in writing, and several others were so advised, not only that he had been dismissed from service, but the notice went on to say that he had been dismissed for misrepresenting facts regarding his personal injury.

It was for the jury to determine whether the charge of dishonesty was false, and libelous, or if true, whether it did not exceed qualified privilege.

It is reasonably inferable also that the respondent was damaged in his business or employment. He was discharged by appellant allegedly because he was unworthy of belief, and so lacking in character that he should not be employed as a mail clerk. The following definition of "Libel" is taken from *Smith v. Bradstreet Co.*, 63 S. C. 525, 41 S. E. 763, and is restated in *Riley v. Askin & Marine Co.*, 134 S. C. 198, 132 S. E. 584, 586, 46 A. L. R. 558: "A libel is a malicious defamation, expressed either by writing or printing, or by signs, pictures, effigies, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty or integrity or reputation, or publish the natural or alleged defects, of one who is alive, and thereby to expose him to public hatred, contempt, ridicule, or obloquy, or to cause him to be shunned or avoided, or to injure him in his office, business, or occupation."

The testimony is without contradiction that the plaintiff was not only discharged by appellant from his occupation and was unable to obtain re-employment with the Railroad Company, but is now in a different occupation and receiving far less by way of compensation than he received from appellant.

In our opinion, after a careful consideration of the law and the facts, the trial judge committed no error in holding that the evidence adduced at the trial was sufficient on the issue of libel for the case to be submitted to the jury. But a verdict should have been directed in favor of the appellant on the issue of slander.

Judgment affirmed as modified.

STUKES and OXNER, JJ., concur.

BAKER, C. J., and TAYLOR, J., dissent.

BAKER, Chief Justice (dissenting).

I regret that I am unable to agree with the opinion of Mr. Justice FISHBURNE that there was a publication of a libel in the legal sense of publication.

His opinion is to the effect that the trial Judge correctly concluded in the first instance that the appellant was entitled to a directed verdict as to the charges of slander, and that he was in error in so much of his order granting a new trial as relates to that phase of the case. In this he is undoubtedly correct. But he concludes that the written investigation being only qualifiedly privileged, that it was for the jury to say if it was actuated by malice, as well as the sending of the letter of dismissal and, therefore, the case as to the charges of libel in the complaint should have been submitted to the jury.

I do not deem it necessary to consider whether the whole investigation and dismissal letter were such as to raise an issue as to malice and an abuse of the privilege, because it seems to be clear that there was no publication of the matter contained in the investigation or of the letter of dismissal. It was alleged in the complaint (Paragraph 12) concerning the investigation made on March 18, 1948, that the report thereof was reduced to writing and distributed among the persons testifying upon such investigation. There is no proof whatsoever to support this charge and on the contrary, the uncontradicted testimony is that a copy thereof was given

only to the respondent, Fulton. The other claim of libel relates to the sending of the dismissal letter, dated April 3, 1948, from R. C. Murchison, Superintendent of appellant at Rocky Mount, N. C., to the respondent, and carbon copies thereof sent to H. S. Flippen, E. H. Powell and J. C. Mixon. It was stated in said letter that respondent had been dismissed from the service of appellant for misrepresenting facts regarding his personal injury, and directed respondent to report to Trainmaster Flippen's office (at Richmond) and turn in all company property and transportation held by him. The record shows that Mixon was superintendent of transportation of the northern division at Savannah, Ga., and the man who finally decides on discipline applied. Powell was the trainmaster at the south end of the Richmond district, and the one who made the investigation and recommended the dismissal of the respondent from the service of the appellant. In fact, Powell testified that he dismissed the respondent from the service. It will therefore be seen that each of whom received a copy of the dismissal letter was an officer of the appellant, and who it was necessary should be informed of the dismissal of the respondent and the cause therefor. None of these parties, including the stenographer who wrote the letter, was a third person in the sense of the law relating to the publication of a libel.

That which was done in this case was not in a legal sense publication of the contents of the letter from Murchison, Superintendent, to the respondent. These principles are firmly established. See *Rodgers v. Wise,* 193 S. C. 5, 7 S. E. (2d) 517, 518, *Watson v. Wannamaker,* 216 S. C. 295, 57 S. E. (2d) 477 and *Prins v. Holland-North American Mtg. Co.,* 107 Wash. 206, 181 P. 680, 5 A. L. R. 451, a closely analogous case, which is cited with approval in *Rodgers v. Wise, supra.* Quoting from *Rodgers v. Wise, supra:* "In 36 C. J., § 174, p. 1225, it is announced that communication between officers and agents of a corporation, or dictation to a stenographer in the corporation's employ by an officer or agent thereof, is not publication of libelous matter."

For the foregoing reasons, I think it is unnecessary to consider the other issues raised by the appeal, and that the order granting a new trial should be reversed, and the case remanded for entry of judgment in favor of the appellant.

TAYLOR, J., concurs.