17697

Bertha RENEW, Plaintiff-Respondent, v. Herman SERBY and Vacation Wear, Inc., Defendants-Appellants

(115 S. E. (2d) 664)

*Messrs. Henderson, Salley & Cushman,* of Aiken, *for Appellants,*

*Messrs. Williams & Busbee,* of Aiken, *for Respondents.*

August 11, 1960.

LEGGE, Justice.

In this action for slander the jury found for the plaintiff. The defendants charge error in the refusal of their motions for nonsuit, direction of verdict, and judgment *n. o. v.*

During July, 1958, the plaintiff, a young married woman, was employed by the corporate defendant at its plant at New Ellenton, S. C., as an inspector of garments, and the defendant Serby was employed by it in a managerial capacity. Serby was at the New Ellenton plant only one or two days each week, and had little personal contact with the plaintiff or other employees of like status.

The complaint alleged that on July 25, 1958, the defendant Serby, while engaged in his duties at the New Ellenton plant, in the presence of one or more employees "uttered and published verbally of and concerning plaintiff words which

were intended to and did impute to plaintiff a want of chastity, by then and there stating that plaintiff was his (Serby's) girl, requesting that plaintiff refuse to have sexual relations with her (plaintiff's) husband that night; and then uttering the following remark to plaintiff: 'Oh, honey, don't blush like that. Come on back here and let me talk to you.' "

The defendants filed a joint answer, admitting that at the time and place in question a conversation had taken place between the plaintiff and the defendant Serby, but denying that its substance was as alleged in the complaint, and setting forth an entirely different version of the matter.

In support of the allegations of the complaint the plaintiff testified that on the day in question, which was a Friday, when she and Mrs. Mills, another employee, had returned to the plant after lunching together, Serby called them to his desk, where he and one Leonard Whitt, an employee in the shipping department, were seated; that in response to Serby's inquiry as to the progress of the work, plaintiff replied that it was "coming along all right", but that the "make-up", *i. e.,* the amount of production set for each day, was getting very high. From this point we quote her testimony:

"Mr. Serby said don't worry about the make-up, we are not in a rush, we will see about it later. He reached out, he held out his hand and tried to catch my hand. He told the man: 'This is my girl.' I said: 'No, sir, I am not your girl.' He said: 'You will have to work tomorrow.' I said: 'I don't mind working on Saturday.' He said: 'You can break that date tonight.' I said: 'I have a husband I love very much. I have a date with him every night.' He said: 'You go home and tell him he can't have any of that stuff tonight or any night.' Mrs. Mills and I walked away and started to the table to get the material. He hollered and said: 'Come on back, honey, don't blush like that.' I went to my inspector's table and I gathered up my belongings. He was standing in the middle of the floor. I asked him what he meant by talking to me like that. He said he run into all the girls like that. I said: 'Here men don't run on women no such way.' "

Mrs. Mills' testimony corroborated that of the plaintiff except as follows: According to Mrs. Mills, when Serby said of the plaintiff, "This is my girl", he looked at Whitt and laughed. Also, when plaintiff replied that she was not his girl, she turned as if to walk away, whereupon the following transpired: "He said: 'By the way, you are going to have to work tomorrow.' She said: 'I don't mind working; we could use the money.' He said 'By the way, you have a date tonight?' She said: 'Yes, I have a date. I am married, and I keep it with my husband every night.' He said: 'You will have to tell your husband he cannot have any of that stuff tonight, but you will work tomorrow.' Neither of us said anything at that time. We turned and started out towards the back of the building where the work was. He called back to her to come back. He said: 'Hey, honey, come back; don't blush like that; come back.' We kept on walking. I don't know what was said after that. We went right together."

Both Serby and Whitt denied that anything untoward was said; but the testimony of the two women is corrborated by the fact that the plaintiff quit her job immediately and went to report the incident to her husband.

No point is made of the fact that the plaintiff's proof did not bear out, in so many words, the allegation that Serby requested her to "refuse to have sexual relations with her (plaintiff's) husband that night", but showed instead that he used a slang expression. Nor is any question made of her failure to offer proof as to the meaning of the expression used. We take it to be conceded, then, that Serby's words meant, and were understood by those who heard them to mean, that she should refuse to have sexual relations with her husband that night.

Plaintiff alleged, as the foundation of her cause of action, that Serby's words charged her with unchastity. If they did, they were slanderous *per se*, and her case required neither allegation nor proof of special

damage. *Buffkin v. Pridgen,* 154 S. C. 53, 151 S. E. 105; *Stokes v. Great Atlantic & Pacific Tea Co.,* 202 S. C. 24, 23 S. E. (2d) 823.

The rule in this state in slander cases is that if the language is ambiguous and susceptible of two meanings, one slanderous and the other innocent, it must be left to the jury to determine, from all attendant circumstances, in what sense the speaker used them. *Tucker v. Pure Oil Co. of the Carolinas,* 191 S. C. 60, 3 S. E. (2d) 547; *Nettles v. MacMillan Petroleum Corp.,* 210 S. C. 200, 42 S. E. (2d) 57.

Serby's remarks concerning plaintiff's relations with her husband, considered in the circumstances attending their utterance, may, at best (if such a term could be used with reference to them) have been susceptible of interpretation, as a coarse joke, that because the plaintiff would have to work on Saturday she should refrain from marital intimacy the night before. At their worst, they could have been taken as suggesting that she forego marital intercourse in favor of illicit relations with Serby. In whatever light they be studied, they were coarse, indecent, and offensive; but we do not think that they may reasonably be construed as charging her with unchastity. Nor is this view of them changed by the fact that before their utterance Serby had referred to the plaintiff as "my girl". That expression we think was harmless; it carried no suggestion of unchastity; and the phase of the conversation between Serby and the plaintiff in which it was used was brought to an abrupt end by plaintiff's reply. The conversation that followed began with reference to the necessity for working on Saturday, and it ended with plaintiff's departure in proper resentment of Serby's improper comments concerning marital relations between her and her husband; but those comments were not reasonably to be related to his earlier reference to the plaintiff as "my girl".

We think that the trial judge should have directed the verdict for the defendants. The judgment is therefore re-

versed and the cause remanded for entry of judgment under Rule 27.

Reversed and Remanded.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.